IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30476
_____


UNITED STATES OF AMERICA;

                         Plaintiff - Appellee

STATE OF LOUISIANA, on behalf of
Department of Environmental Quality

                         Intervenor Plaintiff - Appellee

      v.


ACADIANA TREATMENT SYSTEMS INC; ET AL

                         Defendants

MICHAEL M JOHNSON

                         Appellant

_____

Appeal from the United States District Court
for the Western District of Louisiana
(98-CV-687)
_____

May 3, 2000

Before KING, Chief Judge, and REAVLEY and STEWART, Circuit
Judges.

KING, Chief Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellant Michael M. Johnson appeals from the district court's judgment appointing a receiver of Johnson Properties, Inc. Appellant argues that the receivership constitutes a taking of private property without just compensation, and that the district court improperly granted the receivership control over out-of-state subsidiaries of Johnson Properties, Inc. For the reasons stated below, we DISMISS the appeal.

I. BACKGROUND AND PROCEDURAL HISTORY

Appellant Michael M. Johnson ("Johnson") is the vice-president and chairman of the board of Johnson Properties, Inc. ("JPI"), a Mississippi corporation. Johnson is also the sole shareholder of JPI. JPI has approximately sixty subsidiaries, which are primarily engaged in the water and sewage treatment industry and own approximately two hundred and thirty sewage treatment plants ("STPs") in Louisiana, North Carolina, South Carolina, Tennessee, Pennsylvania, and Mississippi. At issue in this case is one such subsidiary, Acadiana Treatment Systems, Inc. ("ATS"). ATS, a Louisiana corporation, owns 116 STPs located in Louisiana.

On January 16, 1998, the United States, acting at the request of the United States Environmental Protection Agency (the "EPA"), filed suit against JPI, ATS, and Darren K. Johnson (the general manager of ATS) in the United States District Court for the Middle District of Louisiana (the "enforcement action"). The complaint alleged that ATS' Louisiana STPs had violated Section

2

301(a) of the Clean Water Act (the "CWA"), <u>see</u> 33 U.S.C. § 1311(a), and certain terms, conditions, and limitations of the National Pollutant Discharge Elimination Systems permits issued to ATS pursuant to Section 402 of the CWA, <u>see</u> 33 U.S.C. § 1342.

On April 16, 1998, the district court transferred the action <u>sua sponte</u> to the Western District of Louisiana. On May 15, 1998, the United States filed an amended complaint, which added other JPI subsidiaries as defendants.[1] On May 27, 1998, the State of Louisiana, on behalf of the Department of Environmental Quality, filed a motion to intervene as a plaintiff. The district court granted the motion on May 29, 1998. The State of Louisiana's complaint in intervention alleged claims under the Louisiana Environmental Quality Act, <u>see</u> LA. REV. STAT. ANN. § 30:2001 (West 1998), in addition to the federal claims originally brought by the United States.

The parties entered into settlement negotiations, and ultimately, a consent decree was entered by the district court on July 31, 1998. The decree stated that the defendants, as well as "their officers, agents, successors, assigns, and all persons acting on their behalf," were bound by its terms. The decree

---

[1] The United States added as defendants Acadia Woods Add. # 2 Sewer Co., ATS Utilities, Inc., Beaujolais Sewerage Service Corp., Brandywine Sanitation Corp., Cedar Bend Villas Sewer Co., Inc., Community Sewerage Service, Inc., Green Briar Sewer Co., Inc., Hunstock Hills Sewer Co., Inc., Pointe Coupee Sewerage, Inc., Rigolets Utilities, Inc., Seashore Utilities of Louisiana, Inc., Tara Development Corp., Thoroughbred Park Service Corp., Timberley Terrace Sewerage, Inc., Tri-B Sanitation Corp., Twelve Cedars Sanitation Corp., and Williams & Ingram Sewerage Co., Inc. (together with JPI and ATI, "the defendants").

3

provided, <u>inter</u> <u>alia</u>, that the defendants were to comply with "federal and state rules and regulations governing generation, treatment, storage and disposal of pollutants, including sewage treated at the STPs."[2] The decree specified that the defendants were to immediately perform a number of compliance measures, and established a time frame for the performance of additional measures and for the completion of an audit. The decree also stipulated certain penalties in the event that the defendants violated the terms of the decree. It further provided that the district court retained jurisdiction of the matter "until further order of the Court or until termination of [the] Consent Decree."

In December 1998, contractors employed by the EPA and by the Louisiana Department of Environmental Quality inspected 73 of the Louisiana STPs owned by the defendants. The inspectors found 661 violations of the consent decree, including the continued release of raw sewage and sewage sludge into the environment. None of the inspected STPs was found to be in compliance with the terms of the consent decree. Consequently, on February 8, 1999, the United States and the State of Louisiana filed a motion with the district court requesting the appointment of a receiver to operate the STPs.

On March 12, 1999, JPI filed a petition for Chapter 11 bankruptcy protection in the Middle District of Louisiana. JPI also filed an application for a supplemental stay with regard to

---

[2] The consent decree listed 179 Louisiana STPs owned by the defendants.

4

itself and the other defendants in the enforcement action. The bankruptcy court initially granted the stay. After a conference with the parties to the enforcement action, however, the bankruptcy judge concluded that 11 U.S.C. § 362(B)(4) exempted the enforcement action from the automatic stay provision. The defendants then noticed a joint motion for stay in the district court on March 15, 1999. The district court denied the motion, and the defendants subsequently petitioned this court for a writ of mandamus. We denied the defendants' petition on March 18, 1999. See In re Johnson Properties, Inc., No. 99-30264 (5th Cir. 1999) (order denying petition for writ of mandamus).

The district court conducted a hearing on the motion to appoint a receiver from March 15, 1999 to March 19, 1999. On March 22, 1999, the district court issued a memorandum ruling and judgment. The judgment had several components. First, the district court appointed Martin A. Schott as receiver of JPI, its assets, and all its subsidiary corporations, including but not limited to the subsidiaries that were defendants to the enforcement action. The court also granted the receiver broad powers to perform all acts necessary to achieve compliance with the consent decree, including the authority to sell corporate property and to manage, control, and deal with "all items, assets, properties, contracts, and other matters incident to the Receiver's responsibilities." Furthermore, the judgment ordered that

> Michael Johnson . . . [is] hereby enjoined, restrained
> and prohibited from going onto property belonging to

5

defendants or from having any contact with defendants' employees or employees of any entity doing business with, or performing maintenance or any remedial measures to the facilities owned or operated by the defendants, without the prior approval of the Receiver, . . . or from interfering in any way with the Receiver in the discharge of his duties. . . .

In addition, the district court ordered Michael Johnson to "cooperate and assist the Receiver in any way that [the Receiver] deems appropriate."

The district court declared that its judgment constituted a final judgment under Federal Rule of Civil Procedure 54(b), but retained jurisdiction for the purposes of enforcing the provisions of the judgment. Johnson timely appeals.

II. DISCUSSION

For the first time on appeal, Johnson claims that (1) the order appointing a receiver confers powers of such scope as to constitute a taking of private property without just compensation; and (2) the district court abused its discretion by granting the receiver control over out-of-state subsidiaries and their assets.

Before addressing the merits of Johnson's claims, however, we must consider whether Johnson, the sole shareholder of JPI, has standing to urge on appeal the issues set out in his brief.[3] See Lang v. French, 154 F.3d 217, 222 & n.28 (5th Cir. 1998)

---

[3] The United States maintains that Johnson has standing to appeal because the district court's order directly affected him. Despite the apparent lack of dispute, we examine the basis of our appellate jurisdiction sua sponte. See Borne v. A&P Boat Rentals, 755 F.2d 1131, 1133 (5th Cir. 1985).

6

(citations omitted).  "The inquiry as to whether a particular [litigant] has standing has two components, involving 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'"  <u>Association of Community Orgs. v. Fowler</u>, 178 F.3d 350, 356 (5th Cir. 1999) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)).

To establish standing under Article III, § 2 of the Constitution, Johnson must show (1) an injury in fact (2) that is fairly traceable to the challenged act and (3) that is likely to be redressed by the requested remedy.  <u>See</u> <u>Davis v. East Baton Rouge Parish School Bd.</u>, 78 F.3d 920, 926 (5th Cir. 1996) (citations omitted).  In addition, federal courts have restricted the exercise of their jurisdiction based on certain prudential limitations, including the principle that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."  <u>Powers v. Ohio</u>, 499 U.S. 400, 410 (1990).  Closely related to this principle is the equitable restriction against shareholder suits to redress injuries to a corporation.  <u>See</u> <u>Franchise Tax Bd. of Cal. v. Alcan Aluminum</u>, 493 U.S. 331, 336 (1989) (citations omitted).  A shareholder may only bring an action to enforce the rights of a corporation when either (1) "the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment," or (2) the shareholder has a "direct, personal interest" in the action, "independent of [his] status as shareholder[]."  <u>Id.</u> at

7

336-37; see also Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. 1981) (per curiam); Gregory v. Mitchell, 634 F.2d 199, 202 (5th Cir. 1981).

Johnson has alleged two separate injuries. In connection with his takings claim, he contends that he will be permanently deprived of property because the receiver will sell some of JPI's subsidiaries' assets in order to finance the process of bringing the STPs into compliance with the terms of the consent decree. Next, Johnson asserts that the public served by JPI's water and sewage facilities outside Louisiana will be placed "at undeserved risk for irreparable harm" because the district court granted the receiver authority over non-Louisiana JPI subsidiaries. Johnson does not define the nature of this harm, but states in his reply brief that non-Louisiana taxpayers will be unjustly forced to pay for the cleanup of Louisiana STPs.

These purported injuries are insufficient to confer standing to assert on appeal the issues that Johnson addresses in his brief. Johnson cannot complain that he will be injured because some of the subsidiaries' assets may be sold by the receiver. It is a well-established principle of corporate law that corporate assets belong to the corporation, not to the shareholder. See Sun Towers v. Heckler, 725 F.2d 315, 331 (5th Cir. 1984); Engel v. Teleprompter Corp., 703 F.2d 127, 131 (5th Cir. 1983) (subsidiary corporation is legal entity separate from its shareholders). Thus, the injury asserted by Johnson actually

8

inheres in the corporation.[4]  We have held that, in general, "diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing . . . in his own right."  <u>Stevens</u>, 643 F.2d at 1080; <u>see also</u> <u>Gregory</u>, 634 F.2d at 202 (loss in value of stock is not a sufficiently direct injury to confer standing).  However, we have not addressed the question whether a shareholder has standing to allege a taking of corporate assets.  The Federal Circuit, which has, has only exercised jurisdiction over a derivative action asserting a takings claim when the action could be construed "as filed by a sole shareholder on behalf of a corporation alleging that compensation to the corporation will result in a surplus in which the shareholder possesses a direct interest."  <u>California Housing Sec., Inc. v. United States</u>, 959 F.2d 955, 957 n.2 (Fed. Cir. 1992) (shareholders had right to post-liquidation surplus under 12 U.S.C. § 1821(d)(11)(B)); <u>see also</u> <u>First Hartford Corp.</u>

---

[4]  Because JPI has filed for bankruptcy, the bankruptcy trustee alone has standing to pursue a cause of action to enforce JPI's rights.  <u>See</u> 11 U.S.C. § 541(a).  Although not before us, we are deeply concerned about the fact that JPI has both a trustee and a receiver appointed by and responsive to different courts.  We understand that, to some extent at least, that situation is a result of the timing of the respective motions to appoint a trustee and a receiver.  Given the fact that the bankruptcy court possesses exclusive jurisdiction of all the debtor's property and given the extremely broad powers of a trustee in a Chapter 11 case, however, it is unclear why a receiver continues to be necessary, and the possibility of conflict in the two roles suggests that it may unduly complicate matters.  The fact that one person wears two hats, which apparently gave some comfort to the district court, may not prevent those complications.  Our concerns as to whether both these appointments were necessary or appropriate and should be continued are, however, of no consequence to our standing analysis.

<u>Pension Plan & Trust v. United States</u>, 194 F.3d 1279, 1288 (Fed. Cir. 1999) (same); <u>Branch v. United States</u>, 69 F.3d 1571, 1574-75 (Fed. Cir. 1995) (trustee in bankruptcy had right to recover assets). We are not persuaded that Johnson has alleged such an interest here. As a result, we find that Johnson lacks standing to bring a takings claim or to assert one on appeal.

Furthermore, Johnson's conclusory assertions that the receiver's control over JPI's non-Louisiana subsidiaries will cause "irreparable harm" to the public utterly fail to meet the requirements for Article III standing. See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (citations omitted) (stating that Article III requires an "injury in fact," defined as an intrusion upon a legally protected interest that is (1) concrete and particularized, and (2) actual or imminent, rather than conjectural or hypothetical). Moreover, Johnson clearly lacks standing to bring a claim on behalf of non-Louisiana taxpayers. See <u>Warth</u>, 422 U.S. at 502. In short, Johnson has no standing to bring either of the claims presented or to assert them on appeal. We therefore have no jurisdiction to hear his appeal. See <u>Nevares v. San Marcos Consol. Indep. Sch. Dist.</u>, 111 F.3d 25, 26 (5th Cir. 1997).

III. CONCLUSION

For the foregoing reasons, we DISMISS the instant appeal.

10