REVISED JULY 31, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-40566

DAVE JAMES

Plaintiff-Appellant

V.

TEXAS COLLIN COUNTY; JOE JAYNES, PHYLLIS COLE; JERRY
HOAGLAND; JACK HATCHELL; RON HARRIS; JON KLEINHEKSEL

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before JONES, Chief Judge, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Dave James, a former employee of Collin County, Texas ("Collin County" or the "County"), brought this suit against defendants-appellees Collin County; Ron Harris, County Judge; County Commissioners Joe Jaynes, Phyllis Cole, Jerry Hoagland, and Jack Hatchell (collectively with Ron Harris, the "Commissioners"); and Jon Kleinheksel, Director of Public Works, for violating his First Amendment rights of freedom of speech, association, and expression by terminating his employment after he lost his bid to become the Republican nominee for Collin County Commissioner in the March 2004 primary election.

He now appeals the district court's grant of summary judgment in favor of the Defendants. We affirm.

## FACTS AND PROCEEDINGS BELOW

Collin County hired James in 1996 as an assistant purchasing agent; he became a buyer in 1997. On February 16, 1998, James was promoted to foreman over one of the work crews assigned to maintenance of the county's public works. As a foreman, James reported to the Superintendents of Public Works, Mike McClatchy and James Lorance, as well as to Director of Public Works, Jon Kleinheksel.

During his tenure at Collin County, James twice sought public office. He made his first bid for the office of County Commissioner during the 2000 election cycle. James's campaign was unsuccessful. James again sought the office of County Commissioner during the 2004 election cycle; the result, however, was the same. Both of these campaigns were against incumbent Joe Jaynes.

After announcing his intent to run for public office in the 2000 election, James was advised, by memorandum, of Collin County's policy concerning political involvement of county employees and of the sections of the Texas Penal Code that prohibit county employees from misusing county property, services, and personnel. The memorandum provided, in pertinent part, as follows:

> "On Friday, January 22, 1999, you informed me of your intention to seek the office of Collin County Commissioner during the Year 2000 campaign. As I informed you in that meeting, the County Personal [sic] Policy Manual states in Section 9.6 Political Involvement:
>
>> 'Collin County employees will not be allowed to perform or be involved in political campaigning or related activities during their normal working hours, while in County uniform, or while using County vehicular equipment. Additionally, no County employee shall be required to participate in political campaigns or related activities as a condition of obtaining or retaining employment.'"

James did not receive any reprimands in connection with his 2000 campaign.

On May 6, 2003, James met with Dudley St. Clair, the Assistant Director of Public Works, who advised him there were reports that James had been harassing front-office employees regarding an employment position he had applied for. James replied to St. Clair, and asserts in his brief to this court, that he simply asked about the position three times in a six-week period.

On May 8, 2003, James received a written reprimand for unprofessional demeanor from Kleinheksel. James insists that this reprimand was in response to his attendance at the May 3, 2003, Collin County Commissioners' meeting. Defendants assert that the reprimanded was for disrupting front-office employees with persistent inquiries about job opportunities. The letter-of-reprimand does not specify the underlying conduct that motivated the reprimand. Moreover, James asserts that the letter was given to him without discussion and that, despite his attempts, Kleinheksel was never available to discuss the reprimand. This claim directly contradicts James's sworn deposition testimony, where he testified that the reasons for the reprimand were explained to him.

Also on May 8, 2003, James met with Amy Krueger, Senior Human Resources Manager, to discuss a variety of issues, including his concern that he was being harassed and discriminated against because of his 2004 campaign. Appellees, citing to James's deposition, note that James told Kreuger that his primary concern was to "protect his job." James also indicated during the meeting that he had concerns about questionable activity occurring in the Public Works Department which he would be disclosing at a later time in writing.

On June 19, 2003, James submitted a letter to Krueger. The letter referenced "Public Services and Operations Concerns" and opened as follows:

> "Please accept this letter as official notification of employee concerns within Collin County Public Services and Operations. The following items have been brought to my attention as possible violations of

County Policy, unethical practices, and/or illegal actions by the Administration of Collin County Public Services and Operations."

The letter delineated James's specific areas of concerns as follows:

1.   Lack of an open door policy.  James stated that when he requested a meeting with the Director of Public Services and Operations (Kleinheksel), he received a reprimand for unprofessional behavior;

2.   Hostile work environment.  James stated that he, along with other unnamed personnel, had been targeted for termination;

3.   Integrity.  James asserted that there was "no confidence and trust in the information communicated to employees";

4.   Humiliation.  James stated that the "Administration humiliates employees in front of others by making derogatory and negative personal remarks";

5.   Intimidation.  James claimed that the employees were "scared for their jobs" and "intimidated into agreeing with questionable activities and practices";

6.   Harassment (both sexual and mental).  James asserted that the Director of Public Services and Operations (Kleinheksel) displayed affection publicly to his assistant, creating an uncomfortable work environment for other personnel.  James additionally stated that, generally, there were "[u]nwanted sexual advances in the form of hugs, touching, and invasion of space";

7.   Questionable hiring practices.  James stated that there was a concerted effort to discharge certain employees so that current or former employees from the City of Carrollton could be hired.  James indicated that the employees who previously worked for the City of Carrollton were not qualified for their positions but received "top pay";

8.   Inaccuracy in time sheet reporting.

9.   Selective application of county policies and procedures.  James stated that the Public Services and Operations Uniform Policy was specifically created to deter him from campaigning on the

job during the 2000 election. He also stated that the Uniform policy was not applied in the same manner to all employees in his department;

10. Misuse of county vehicle and car allowances. James asserted that county vehicles were being used for personal gain;

11. Unprofessional actions. James complained about the public use of offensive language; and

12. Personal questions. James stated that he was questioned about his desire to run for the office of County Commissioner prior to being interviewed for the position of Assistant Director.

After submitting the letter, James met with Bill Bilyeu, Director of Administrative Services and Kleinheksel's supervisor, and Krueger to discuss the concerns raised in his letter. James indicated that his letter was more specifically referring to Kleinheksel. James subsequently met with Krueger on July 2, 2003, to further discuss the contents of his June 19, 2003 letter.

On July 16, 2003, Amy Krueger placed the following memorandum in James's employee relations file:

"Bill Bilyeu, Director of Administrative Services, conducted his own investigation in regards to the items reported by Dave James' [sic] in his letter dated 06/19/03.

As a result of Mr. Bilyeu's findings, John [sic] Kleinheksel, Director of Public Services and Operations, has been placed on six months probation, effective 07/15/03."

Bilyeu subsequently issued a "Corrective Action" memorandum to Kleinheksel, which limited his duties and placed him on probation.

Thereafter, on October 22, 2003, Kleinheksel issued a memorandum to James acknowledging James's second bid for the office of County Commissioner. In the memorandum, Kleinheksel stated as follows:

"Per the October 21, 2003 McKinney Courier Gazette, you have obviously expressed your intention to seek the office of Collin

County Commissioner during the year 2004 campaign. As the County Personal [sic] Policy Manual states in Section 9.6 Political Involvement:

> 'Collin County employees will not be allowed to perform or be involved in political campaigning or related activities during their normal working hours, while in County uniform, or while using County vehicular equipment. Additionally, no County employee shall be required to participate in political campaigns or related activities as a condition of obtaining or retaining employment.'"

Apparently, Kleinheksel's reference to Section 9.6 of Collin County's Personnel Policy Manual was in error. The Personnel Policy Manual was superseded by Collin County's Employee Handbook on September 1, 2003. The Employee Handbook provides in relevant part as follows:

"Political Involvement

. . . Collin County employees are not permitted to perform or be involved in political campaigning or related activities, whether paid or voluntary in the following circumstances:
  # during normal working hours, or on paid overtime
  # while in county uniform
  # while using county vehicles . . .

Solicitation and Distribution

. . . individuals are not permitted to solicit, survey, petition, or distribute literature during work time. Work time includes both the soliciting and the solicited employee's work time."

Additionally, there is some dispute as to whether Collin County ratified its County Building/Ground Use Policy and whether James received a copy of that policy.[1]

---

[1] The County Building/Grounds Use Policy provides:
"There shall be no public solicitation within the hallways, lobby, offices, or other areas of Collin County Government Property unless approved by the Commissioners' Court.

On November 20, 2003, James was in the Collin County courthouse on personal time. He approached Collin County employee Debbie Brockman while she was working at the courthouse and asked her for her support in his campaign against Jaynes. Brockman asserts that James expressed negative and derogatory opinions about Jaynes. James disputes this allegation, but he admitted in his deposition that he may have criticized Jaynes when he spoke to Brockman and that Brockman may have taken his remarks as a personal attack on Jaynes. Regardless, shortly after her conversation with the James, Brockman reported the incident to Bilyeu.

On December 1, 2003, Kleinheksel issued a written warning to James, the content of which is as follows:

> "Debbie Brockman met with Bill Bilyeu on November 26, 2003, concerning an unsolicited and inappropriate discussion she had with you on November 20, 2003. You solicited Ms. Brockman's political support during her normal working hours and within the County Courthouse. Your discussion was a violation of the intent of my October 22, 2003 memo to you and also Section 9.6 of the County Personnel Manual. Your political campaigning cannot take place during your work hours nor may you campaign to other County employees during their work hours.
>
> Personal attacks upon the character of elected officials to employees during their working hours are inappropriate and will be considered insubordination."

James asserts that this reprimand, like that of May 2003, was given without warning or discussion. Specifically, James asserts that Kleinheksel did not bother to determine whether James was working for the County at the time he spoke to Brockman.

---

. . .
No signs, posters, handbills, or notices shall be posted in, on, or about Collin County Facilities without the prior written approval of the Facilities Manager."

After receiving the reprimand, James requested a meeting with Bilyeu. Sometime in December 2003, James met with Bilyeu, Kleinheksel and Cynthia Jacobson, Director of Human Resources. Bilyeu advised James there was a County Building/Ground Use Policy which specifically prohibited the solicitation of votes. James asserts that he requested a copy of the policy at this meeting, but it was never provided to him. Bilyeu and Jacobson allege that James became hostile, raised his voice, and threatened Bilyeu and his family during the meeting. James denies this allegation. On February 25, 2005, Kleinheksel met with James to tell him that he and Mike McClatchy had found some of James's campaign materials posted on county property. James stated that he did not post the material but that he would tell his volunteers not to place any more materials on county property.

On March 9, 2004, James lost his bid for County Commissioner in the primary election. On March 15, 2004, Kleinheksel and Jacobson met with James to inform him that his employment with Collin County was terminated. There is some dispute regarding whether James was informed of the motivation for his discharge. Jacobson states that she informed James that he was being discharged due to his inappropriate conduct in violation of county policies. James asserts that he was not so informed. Moreover, there is some dispute regarding who made the decision to discharge James. James asserts the County Commissioners decided to discharge him. The Defendants assert, however, that Bilyeu was the sole decision-maker regarding James's discharge.

James filed his original complaint on March 11, 2005, raising claims under 42 U.S.C. §§ 1983 and 1988 that he was wrongfully discharged because he had exercised his constitutionally protected rights of free speech, association, and expression. Defendants filed a motion for summary judgment on October 27, 2006. The district court granted Defendants' motion on May 4, 2007. James timely appealed.

DISCUSSION

On appeal, James argues that the district court erred by granting summary judgment on his claims against the Commissioners in their individual capacities because their was no evidence that they were involved in the decision to terminate him and by holding that his claim against Kleinheksel was only brought against him in his official capacity. He also asserts that the district court erred by holding that his June 19, 2003 letter and his campaign for County Commissioner were not protected speech because the County's interest in efficiency outweighed James's interest in his speech on a matter of public concern.

I.    Standard of Review

This court reviews a district court's grant of summary judgment de novo. Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 184 (5th Cir. 2005). Summary judgment shall be entered in favor of the moving party if the record, taken as a whole, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if a reasonable trier of fact could return a verdict for the nonmoving party. See Crowe v. Henry, 115 F.3d 294, 296 (5th Cir. 1997). Further, whether the speech at issue relates to a matter of public concern is a question of law to be resolved by the court. Salge, 411 F.3d at 184. In the absence of any disputed, material facts, this court reviews a district court's Pickering analysis de novo. Id.

II.   Claims Against the Commissioners and Kleinheksel

James asserts that the Commissioners and Kleinheksel, in their individual capacities acting under color of law, deprived him of his First Amendment rights when they terminated him for reporting misconduct in the Public Works Department in his June 19, 2003 letter and for running for County Commissioner in 2004.  The Defendants argue that there is no evidence establishing that the Commissioners or Kleinheksel had any role in terminating James.

To state a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000).  A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.  Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999).  A supervisor is not personally liable for his subordinate's actions in which he had no involvement.[2]  Id. at 443-44.

A.   The Commissioners

In his complaint, James alleges that the Commissioners are personally liable because they are the "final decision and policy makers regarding the employment decision for which the Plaintiff brings this suit," but he points to no competent summary judgment evidence to support this allegation.

In his deposition, James testified that he believed the Commissioners unanimously agreed to terminate him, but when asked if he had any evidence of this he said, "[n]ot at this time."  In James's response to the Defendants'

---

[2] There are limited exceptions to this rule, but none apply to this case.  See e.g., Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994) (en banc) (holding that school officials can be held personally liable if their deliberate indifference allows a subordinate to violate a student's right to bodily integrity).

motion for summary judgment, he pointed to an article dated March 16, 2006 in the Dallas Morning News, which stated that Jaynes excused himself from a commissioners meeting "that led to Mr. James' termination."[3] Lee Powell, Defeated Candidate Loses Job, DALLAS MORNING NEWS, March 16, 2004, at B1. Newspaper articles, however, are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay. Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005).

On the other hand, the Defendants point to a number of pieces of evidence to support that Bilyeu was the sole decision-maker with regard to James's termination. In his affidavit, Bilyeu states that he had the authority to terminate James and decided to do so after the March 2004 primary. He states that he was not required to receive approval of this decision by the Commissioners, but he chose to inform them of his decision because James had been a candidate for County Commissioner. Bilyeu also testified that the Commissioners did not vote on James's termination. His testimony is corroborated by Cynthia Jacobson, Director of Human Resources for Collin County, who states in her affidavit that Bilyeu alone made the decision to terminate James in March 2004.

After considering the entire record, there is no evidence that would allow a reasonable jury to find that James was terminated by the Commissioners rather than by Bilyeu.[4] We therefore hold that the district court did not err by granting the Defendants' motion for summary judgment and dismissing James's claim against the Commissioners in their individual capacity.

B.     Kleinheksel

---

[3] James has not offered any competent summary judgment evidence to corroborate this characterization of the meeting.

[4] James chose not to name Bilyeu as a defendant in this suit in either his official or individual capacity.

11

The district court concluded that Kleinheksel was sued only in his official capacity because James failed to specify in any of his responsive briefings in which capacity he was suing Kleinheksel. James argues that he did not respond to this issue because it was never raised by the Defendants.

In the Defendants' Original Answer, they aver that James's allegation that Kleinheksel was "'at all relevant times a Collin County employee, [and] he acted under color of law' is vague and ambiguous, and, as such, Defendants lack sufficient knowledge or information to confirm or deny it." Furthermore, in the Defendants' Motion for Summary Judgment and Brief in Support, they state that it is unclear from James's Complaint whether he was asserting a claim against Kleinheksel in his individual capacity, and that even if James was bringing a claim against Kleinheksel in his individual capacity that claim would fail because Kleinheksel was not personally involved in the decision to terminate James. They again addressed this issue in their Reply in Support of Motion for Summary Judgment. James responded to this argument in his Sur-Reply to Defendants' Motion for Summary Judgment, so the issue was properly before the district court. Therefore, James's assertion that this argument was not properly raised below by the Defendants is incorrect.

Below James stated in his sur-reply that his claim against Kleinheksel in his individual capacity was based upon the May 8, 2003 reprimand Kleinheksel issued to James. There are a number of problems with this argument. The first being that James does not seek relief related to his May 8, 2003 reprimand in his never amended or supplemented original complaint, and there is no evidence of any damages that flowed from that reprimand. Second, he fails to make this argument in his brief to this court. See Procter & Gamble Co. v. Amway Corp., 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

Since James fails to present any competent summary judgment evidence that Kleinheksel participated in the decision to terminate his employment,[5] the district court did not err by dismissing James's claims against Kleinheksel in his individual capacity.

## III. Claim Against Collin County

Having determined that James's section 1983 claims against the Commissioners and Kleinheksel, in their individual capacities, were properly dismissed. James's only remaining claim is against Collin County.[6] To maintain a section 1983 claim against a municipality, a plaintiff must show that officials acted in accordance with an official policy or custom. Monnel v. Dep't of Soc. Servs. of New York City, 98 S.Ct. 2018, 2037 (1978).[7] Thus, municipalities are not vicariously liable for rights violations committed by their employees, but they are liable whenever "their official policies cause their employees to violate another person's constitutional rights." City of St. Louis v. Praprotnik, 108 S.Ct. 915, 923 (1988); see also Beattie v. Madison County Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001)

To establish a retaliatory discharge claim under the First Amendment, the plaintiff must prove that: (1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on the

---

[5] The undisputed evidence reflects that Bilyeau alone made the decision to terminate James and instructed Kleinheksel, the head of Public Works, to whom James reported, to inform James that he was terminated, and Kleinheksel did so. Kleinheksel had previously delivered reprimands to James at Bilyeu's direction, as James admits.

[6] James's claims against the Commissioners and Kleinheksel in their official capacities are actually claims against Collin County, so these claims will be addressed together.

[7] There is an exception to this rule in certain cases where the deprivation of rights was inflicted by an official exercising his or her policy-making authority. Tharing v. City of Port Lavaca, 329 F.3d 422, 427 (5th Cir. 2003). There is no evidence in the record to support a finding that Bilyeu had (and was exercising in respect to James's termination) policy-making authority for employment decisions in Collin County. In fact, James avers in his complaint that the Commissioners were the final decision and policy makers regarding his termination.

matter of public concern outweighed the defendant's interest in promoting efficiency (balancing under Pickering v. Board of Education, 88 S.Ct. 1731 (1968)), and (4) his speech was a substantial or motivating factor behind the defendant's actions. Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999).

James asserts that he suffered an adverse employment action,[8] his termination, because he exercised his First Amendment rights on two separate occasions. The first was his June 19, 2003 letter reporting Kleinheksel for various inappropriate conduct. The second was his 2004 campaign for the Republican nomination for Collin County Commissioner. We will analyze each separately.

A.    June 19, 2003 Letter

The district court held that James's March 2004 termination was an adverse employment action, and that his letter of June 19, 2003 did at least partially touch on a matter of public concern. Nevertheless, the district court held that James's speech was not protected because his speech interest was outweighed by the government's interest in efficiency. James argues that this was an error because there was a fact issue as to whether his speech actually caused controversy in the County that would have harmed its efficiency, so the issue should have been submitted to a jury. The district court did not address the fourth element of James's claim—whether his speech was a substantial or motivating factor behind his discharge.[9]

---

[8] In his brief, James points to three adverse employment actions: (1) his May 8, 2003 reprimand; (2) his December 1, 2003 reprimand; and (3) his March 15, 2004 termination. However, in his unamended (and unsupplemented) original complaint he only seeks relief for his March 15, 2004 termination. Additionally, all of his alleged damages flow from his termination. Therefore, we will consider James's termination as the sole adverse employment action in this dispute.

[9] Although the district court did not reach this issue, we may still consider it because a lower courts grant of summary judgment can be affirmed on any basis supported by the

14

It is undisputed that James's termination was an adverse employment action. Whether or not James's June 19, 2003 letter is speech on a matter of public concern may be a close question. However, assuming arguendo that it does sufficiently touch on a matter public concern, James's claim nonetheless fails for two independent reasons. First, since Collin County cannot be held vicariously liable under section 1983 for its employee's actions, James cannot recover unless he shows that Bilyeu terminated James for his June 19, 2003 letter pursuant to official policy or custom of the County. James has presented no evidence establishing such a policy or custom. Second, James has not presented any evidence that would allow a reasonable jury to find that his June 19, 2003 letter was a substantial factor in his May 2004 discharge.[10] Benningfield v. City of Houston, 157 F.3d 369, 375 (5th Cir. 1998); Wilson v. UT Heath Ctr., 973 F.2d 1263, 1270 (5th Cir. 1992).

It is undisputed that James's June 19, 2003 letter lodged a number of serious allegations against Kleinheksel. After James submitted his letter, Bilyeu conducted an investigation into these allegations. As a result of this investigation, Bilyeu took substantial disciplinary action against Kleinheksel that involved cutting his salary, placing him on probation for ninety days, prohibiting him from making budgetary or personnel decisions for six months, and transferring his responsibility for overseeing the facilities and youth park departments to other managers.

---

record. Lang v. French, 154 F.3d 217, 219 (5th Cir. 1998).

[10] In his response to the Defendants' motion for summary judgment, James argues that Branton v. City of Dallas, 272 F.3d 730, 739 (5th Cir. 2001), and Click v. Copeland, 970 F.2d 106, 113 (5th Cir. 1992), require us to leave causation in this case to the jury. He is mistaken. While causation is generally a question of fact to be left for the jury, at summary judgment the plaintiff bears the burden of showing that a genuine factual dispute exists. If the plaintiff fails to meet this burden, summary judgment is appropriate. Pierce v. Tex. Dep't of Criminal Justice, 37 F.3d 1146, 1151 (5th Cir. 1994).

James asserts he was terminated in retaliation for exposing Kleinheksel's wrongdoing. While it is probable that Kleinheksel harbored ill-will against James because of the allegations James lodged against him in the June 2003 letter, James has produced no evidence that Kleinheksel participated in the decision to terminate him. That decision was made by Bilyeu alone. Nevertheless, James speculates that Bilyeu retaliated against him because it was personally embarrassing for Bilyeu to have the misdeeds of one of his department heads exposed. James provides no factual basis whatever for this speculation. Furthermore, this explanation is contradicted by the fact James's June 2003 comments prompted Bilyeu to conduct an investigation into their merits that ultimately led him to severely punish Kleinheksel.

James has failed show a genuine issue of material fact with respect to whether his June 19, 2003 letter was a substantial factor in his termination.

B. 2004 Campaign

James also asserts that he was terminated because he challenged incumbent Joe Jaynes for the Republican nomination for County Commissioner in 2004. He argues that the district court erred by holding that the county's interest in efficiency outweighed his interest in speaking on a matter of public concern—his campaign for County Commissioner.

1. Matter of Public Concern

When determining whether an employee's speech addresses a matter of public concern we examine the speech for which the employee was disciplined. Commc'n Workers of Am. v. Ector County, 467 F.3d 427, 437 (5th Cir. 2006) (en banc). The County alleges that James was reprimanded, warned, and ultimately terminated for insubordination and for violating county policy by campaigning on county property.[11] James contends that these reasons were pretextual and

---

[11] Bilyeu states in his affidavit that he also terminated James for insubordination and for threatening him and his family. James was an at-will employee, so it would have been

that he was actually terminated because he campaigned against Jaynes, an incumbent County Commissioner.

While it is unclear that the First Amendment provides a right to run for office that extends generally to government employees,[12] James's broader claim would nevertheless fail because he has presented no competent summary judgment evidence that his employment was terminated because of his decision to run for office,[13] independent of and apart from his alleged campaigning on county property or soliciting on duty county employees.[14] To the contrary, all

---

permissible to terminate him for these reasons. However, Bilyeu also admits that James was also terminated due to his campaign activity on county property. This reason for termination does potentially raise First Amendment concerns, so we will review this basis for James's dismissal.

[12] The Supreme Court held that the First Amendment did not invalidate the original Hatch Act's prohibition against employees of executive agencies participating in political campaigns. See U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 93 S.Ct. 2880, 2886 (1973) (noting that it would be permissible to bar government employees from "becoming a partisan candidate for, or campaigning for, an elective public office"). See also Broadrick v. Oklahoma, 93 S.Ct. 2908 (1973) (state law with provisions similar to Hatch Act); Burns v. Vegliante, 336 F.3d 82, 86, 89 (2d Cir. 2003) (1993 Hatch Act amendments). Central to this holding was that the Hatch Act's prohibitions were neutral and nondiscriminatory. Id. at 2889-91. Thus, it would obviously not be permissible for the government to prohibit employees only from running against incumbents or only from running as Democrats. Bart v. Telford, 677 F.2d 622, 624 (7th Cir. 1982). Absent such a situation, the First Amendment does not guarantee a government employee the absolute right to continue as a governmental employee while being a candidate for political office, such as County Commissioner.

[13] James notes that his discharge was six days after he lost the primary and that he had no work related problems between his loss in the primary and his discharge. But, this court has noted that "[t]iming alone does not create an inference that the termination is retaliatory." Beattie, 254 F.3d at 605 (citing Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999) (employee mentioned his EEOC filing minutes before his termination for insubordination, but plaintiff presented no other evidence suggest of a retaliatory motive)). Moreover, Bilyeu reasonably explained that he waited until shortly after the March 2004 primary to have James terminated because he did not want to have his action possibly cause any effect on the primary election results.

[14] Furthermore, since there is no vicarious liability under section 1983, James would need to go further and show it was a policy or custom of Collin County to terminate employees that decided to run for office. James does not present any evidence to show, or even allege, that such a policy or custom existed.

17

evidence in the record indicates that the County did not punish employees for their decision to run for office.[15]

James then asserts that no reason was given for his discharge and that, under Machincheck v. PB Powers, Inc., 398 F.3d 345, 355 (5th Cir. 2005), this violation of county policy permits an inference of pretext. James, however, fails to point to any county policy that requires a reason to be given for an employee's discharge.

Finally, James asserts that Bilyeu has given inconsistent explanations for James's discharge. In his affidavit, Bilyeu states that he terminated James because James violated county policy by soliciting Brockman's vote and because of James's threats at their December meeting, but James points to an article in the local newspaper which says that Bilyeu said that James was discharged due to budgetary issues. However comments in the local paper as to what Bilyeu said are not competent summary judgment evidence to prove that he made such statements because newspaper articles are hearsay if offered to prove the truth of the facts reported therein. Furthermore, even if there were competent evidence to show that Bilyeu stated to the paper that James was terminated for budgetary reasons, such an inconsistency is not sufficient to show that the County retaliated against him for exercising his First Amendment rights. See also Brady v. Houston Indep. Sch. Dist., 113 F.3d 1419, 1425 (5th Cir. 1997) ("Merely pointing out inconsistencies in the Appellants' stated justifications . . . does not by the mere fact itself create the opposite inference that the Appellants harbored retaliatory motivation.").

It is undisputed that James was reprimanded in December 2003 for soliciting Brockman's vote. And although James argues that Kleinheksel did not

---

[15] For instance, James previously ran against Jaynes for County Commissioner in 2000 and John Robinson, another county employee, also challenged Jaynes in the 2004 Republican County Commissioner primary. Neither were punished.

bother to determine whether James was "on the clock" for the county at the time he spoke to Brockman, that is irrelevant, as the County policy prohibited an off-duty employee from politically soliciting an on-duty employee as Brockman indisputably was (and there is no evidence James believed Brockman was not on duty). Morever, even James admits that his remarks to Brockman could have been taken as personal attacks on the character of Jaynes (for whom she worked). James also admits that he told the Dallas Morning News that he had intentionally ignored the warning not to campaign on county property. James also admitted in his deposition that he had distributed campaign material on county property while he was off duty.

James has presented no evidence that he was terminated for any First Amendment related reason, other than for campaigning on county property. Accordingly, we will evaluate whether the County terminating him for his campaigning on county property as outlined above violates the First Amendment. It is undisputed that James's campaign for County Commissioner addresses a matter of public concern.

2.      Pickering Balancing

Once a plaintiff shows that his speech addresses a matter of public concern, the court must strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern [against] the interest of the [County], as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 88 S.Ct. 1731, 1734 (1968). With respect to restricting the speech of its employees "the government as employer indeed has far broader powers than does the government as sovereign." Waters v. Churchill, 114 S.Ct. 1878, 1886 (1994); Garcetti v. Ceballos, 126 S.Ct. 1951, 1958 (2006). On the other hand, the Supreme "Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First

Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti, 126 S.Ct. at 1957. Therefore, we are asked to balance James's interest in campaigning for political office against the state's efficiency interest in keeping its employees from participating in partisan political activities while on duty or on county property.

The balancing of these interests is not new to federal courts, and when presented with this situation, courts have repeatedly held that "[e]ven something as close to the core of the First Amendment as participation in political campaigns may be prohibited to government employees." Waters, 114 S.Ct. at 1886 (citing Broadrick v. Oklahoma, 93 S.Ct. 2908 (1973) and U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 93 S.Ct. 2880 (1973)). In many of these cases, courts have upheld broad viewpoint neutral bans on political participation by government employees while working or on government property because governments have a strong interest in maintaining a nonpartisan civil service. See e.g., Letter Carriers, 93 S.Ct. at 2889-91 (original Hatch Act's prohibition against federal employees participating in political campaigns); Broadrick v. Oklahoma, 93 S.Ct. 2908, 2913 (1973) (state law prohibiting state employees from soliciting for political purposes, running for paid public office, or political campaigning); Wachsman v. City of Dallas, 704 F.2d 160 (5th Cir. 1983) (local law barring employees from certain participation in nonpartisan candidate elections); Burrus v. Vegliante, 336 F.3d 82, 91 (2d Cir. 2003) (upholding the amended Hatch Act's prohibition against government employees conducting political activity in government buildings).

That these policies were viewpoint neutral is critical because the basic thrust of the Supreme Court's Pickering line of cases has been "to ensure that public employers do not use authority over employees to silence discourse . . . simply because superiors disagree with the content of employees' speech."

20

Rankin v. McPherson, 107 S.Ct. 2891, 2897 (1987) (emphasis added). Viewpoint neutral policies, administered without discrimination, remove this concern. Thus, neutral governmental employer policies limiting the political activity of their employees, applicable only to such employees while on duty or on the governmental employer's property, will almost always satisfy Pickering balancing. Cf. Ector County, 467 F.3d at 442.

Collin County's policies meet these criteria. They are viewpoint neutral because they ban all such political campaigning. There is no evidence that the policies have been administered in a discriminatory fashion.[16] They only prohibit employees from political campaigning while working, in county uniform, or in county vehicles; from posting campaign literature on county property; and from soliciting other county employees if either employee is working. Given the neutrality and limited scope of Collin County's policies, it was not a violation of James's First Amendment rights to be terminated for violating them.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[16] James asserts that Jaynes also campaigned on county property, but he does not provide any factual support for this assertion. Bilyeu states that he did not receive any reports that Jaynes was campaigning on county property or soliciting the votes of county employees during their work hours.