# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 22, 2011

No. 10-40611

Lyle W. Cayce
Clerk

ANTONIO JUAREZ,

Plaintiff-Appellee

v.

ROLANDO AGUILAR, Brownsville Independent School District Board of
Trustees, Individually and in their Official Capacity; RUBEN CORTEZ, JR.,
Brownsville Independent School District Board of Trustees, Individually and
in their Official Capacity; JOE COLUNGA, Brownsville Independent School
District Board of Trustees, Individually and in their Official Capacity; RICK
ZAYAS, Brownsville Independent School District Board of Trustees,
Individually and in their Official Capacity,

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The prior panel opinion, *Juarez v. Aguilar*, No. 10-40611 (5th Cir. filed
Sept. 30, 2011), is hereby withdrawn, and this opinion is substituted therefor.

Before the court is the interlocutory appeal of Defendants-Appellants
Rolando Aguilar, Ruben Cortez, Jr., Joe Colunga, and Rick Zayas (collectively,
"Appellants") from the district court's denial of summary judgment. Appellants,
all members of the Brownsville Independent School District ("BISD") Board of

No. 10-40611

Trustees ("Board"), argue that the district court should have granted their motion for summary judgment because they are entitled to qualified immunity. We DISMISS the appeal in part and AFFIRM the district court's order in part.

## I.

On August 12, 2008, the BISD hired Plaintiff-Appellee Antonio Juarez ("Juarez" or "Appellee") as its Chief Financial Officer ("CFO") pursuant to a one-year contract.[1] As CFO, Juarez made insurance recommendations to BISD's Board. One such endorsement recommended American Administration General's ("AAG") bid as the best for the BISD's Stop Loss Insurance Coverage Contract. Juarez's recommendation created tension with members of the Board. Aguilar, Cortez, and Colunga accused Juarez of misinforming the Board regarding the AAG recommendation, while Cortez and Colunga opposed the recommendation and accused Juarez of lying. Cortez and Colunga complained to Hector Gonzales, then-BISD Superintendent.

Shortly after the AAG recommendation, Kent Whittemore, an employee of BISD, initiated a grievance contending that Juarez had lied to the Board. Juarez alleges that Whittemore's grievance was filed at the Appellants' behest, a tactic aligned with BISD's practice of "setting one employee to grieve against another," so as to afford pretext when terminating employees. Whittemore's grievance was consolidated with a second Whittemore grievance and both were heard on January 20, 2009.

Gonzales responded to the controversy by offering Juarez a new position. According to Juarez, Gonzales told Juarez in November 2008 that if Juarez were to resign as CFO, Gonzales would reassign him as the BISD's Grants Administrator. Gonzales would later execute an affidavit in which he averred

---

[1]Because of the limitations on our jurisdiction, we base our factual summary on the Background section of the district court's order and the evidence submitted by Appellee.

No. 10-40611

that he "understood, and believed [he] was conveying to Juarez that if Juarez performed satisfactorily in his newly assigned position, [Gonzales] would not have a problem to recommend renewal of [Juarez's] contract in the new position beyond the existing term of the contract, although, [Gonzales] never specifically told him that using those words." Juarez resigned as CFO on November 24, 2008, with an acceptance of reassignment.

Between his resignation and the hearing concerning the Whittemore grievances on January 20, 2009, Juarez recorded conversations with Elizabeth Brito-Hatcher, a BISD employee, and Otis Powers, a former Trustee of BISD. According to the evidence submitted by Juarez, Brito-Hatcher told Juarez that the BISD was engaged in bidding irregularities, while Powers urged Juarez to file a grievance against Gonzales. Powers suggested to Juarez that if Juarez would file a grievance against Gonzales and blame Gonzales for the statement about the insurance recommendation, Juarez would be reinstated as CFO. Powers also told Juarez that BISD employees routinely used the filing of grievances as a way of advancing their careers.

On January 15, 2009, Juarez and his legal counsel approached the FBI with allegations of improprieties at BISD. During the meeting, Juarez told the FBI that the Appellants were "manipulating the bidding process for the [BISD]'s Stop [Loss] Insurance Coverage." He also told the FBI about his meetings with Powers and Brito-Hatcher and played for the FBI his tape-recorded conversations.

The next day, Juarez filed a grievance based on his experience with the BISD and his conversations with Powers and Brito-Hatcher. Juarez also expressed concern that his abstention from the conspiracy to manipulate the bidding process would result in his termination. He says that he also rescinded his letter of resignation and asked to be restored as CFO. His grievance was later dismissed when Juarez and his legal counsel refused to participate on the

No. 10-40611

grounds that the presiding officer at his hearing was a complained-of party in Juarez's grievance. His request for review at the next level of the grievance process was denied.

On January 20, 2009, counsel for Juarez objected to the continuance of Whittemore's grievance hearing on several grounds and stated that any action flowing from the hearing "[would] be retaliat[ory]." He further said that he "think[s] the Board is aware that Mr. Juarez has reported this activity to the law enforcement agencies." Thereafter, neither Juarez's original contract as CFO nor his reassignment as Grants Administrator were renewed.

Juarez subsequently filed this suit. He alleges Appellants retaliated against him for exercising his First Amendment right to report illegal activity to law enforcement. His suit named Appellants in their official and individual capacities and alleged that the BISD violated the Texas Open Meetings Act, and that the Board conspired to manipulate the insurance bidding procedures. Appellants sought dismissal based on qualified immunity. The district court converted their motion to one for summary judgment and dismissed Juarez's Fourteenth Amendment Due Process claims brought pursuant to 42 U.S.C. § 1983; denied summary judgment on the retaliation claims brought against the Appellants in their official and individual capacities pursuant to § 1983; and further held that Appellants were not entitled to qualified immunity on summary judgment. The district court ruled that genuine issues of fact existed with respect to whether the Appellants' actions violated Juarez's rights under the First Amendment and whether those rights were clearly established at the time Appellants allegedly violated them.[2] This interlocutory appeal followed.

## II.

---

[2]In fact, the district court issued two orders addressing different aspects of the motion for summary judgment. When we refer to the district court's ruling, we are discussing both orders.

This court has limited jurisdiction to conduct an interlocutory review of a district court's order denying a motion for summary judgment based upon qualified immunity. "Although a denial of a defendant's motion for summary judgment is ordinarily not immediately appealable, . . . the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004). Our jurisdiction extends to these appeals only "to the extent that [the denial of summary judgment] turns on an issue of law." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). In other words, "we can review the materiality of any factual disputes, but not their genuineness." *Kinney*, 367 F.3d at 347 (quoting *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000)). We review the district court's conclusions concerning the legal consequences of the facts *de novo*. *Kinney*, 367 F.3d at 349.

Because of our limited jurisdiction, we only review certain aspects of a district court's denial of an official's motion for summary judgment based on qualified immunity. We have explained our jurisdiction to hear these interlocutory appeals by distinguishing between the two components of the district court's order: first, the decision that a "certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law"; and second, the decision that a "genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Kinney*, 367 F.3d at 346. When hearing interlocutory appeals of denials of summary judgment motions, our jurisdiction extends only to reviewing the district court's first determination, i.e., that a "certain course of conduct" would be "objectively unreasonable" as a matter of law. It does not extend to the district court's second determination that a genuine issue of fact exists as to whether appellant engaged in a "course of conduct" that is "objectively unreasonable." *Id.* at 346-47. Accordingly, we do not apply to such appeals the Rule 56 standard that

No. 10-40611

normally governs appeals of motions for summary judgment.

Instead, our precedent sets forth a two-step process to determine whether the "certain course of conduct" was "objectively unreasonable" as a matter of law. We first determine whether the official's conduct violated plaintiff's constitutional rights. *Id.* at 356. Then, we determine whether "the contours of [plaintiff's] right [were] sufficiently clear [at the time of the alleged violation] that a reasonable official would understand that what he is doing violates that right." *Id.* at 356-57 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a "certain course of conduct" would be "objectively unreasonable" as a matter of law, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id.* at 348 (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). "Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the [plaintiff's] version of the facts as true." *Id.* at 348 (citation omitted). We do not have jurisdiction to rule on contentions that require us to resolve factual disputes in defendant's favor. *Id.*

**A.**

We first examine whether Appellants' conduct violated Appellee's First Amendment right to be free from retaliation for protected speech. To establish a retaliation claim, plaintiffs must prove the following elements: "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Id.* at 356. Adverse employment decisions include "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). To establish liability against the government employees in their official capacity,

plaintiffs must additionally show that "the execution of a policy, custom, or practice of the board caused the adverse action." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 579-80 (5th Cir. 2003).

Appellants raise a number of challenges to the district court's order with respect to these elements. Because we do not have jurisdiction to decide the contentions requiring us to overturn the fact-finding of the district court or to rule on the admissibility of the evidence considered by the district court, we reject these challenges. Our jurisdiction does extend, however, to Appellants' arguments regarding the legal "materiality" of the facts considered by the district court, so we will address these contentions.

**1.**

Our jurisdiction does not permit us to consider several issues raised by Appellants. A number of Appellants' contentions effectively challenge the district court's holding that Appellee raised material issues of fact with respect to the elements of a retaliation claim. Appellants argue, for instance, that the evidence shows they did not make the adverse employment decision and therefore cannot be held responsible for it; that they did not know of the Appellee's protected speech; and that the protected speech did not cause the adverse employment decision. All of these arguments, however, implicate factual disputes, and Appellee responds to each with allegations that contradict the Appellants' narrative. According to the evidence presented by the Appellee, the Board collaborated to evade policy guidelines with respect to Juarez's employment; the Board knew about the protected speech because Juarez's attorney had told them about it; and this knowledge caused the Board to decide not to renew Juarez's contract. To hold for Appellants with respect to these contentions, we would need to resolve these factual disputes in Appellants' favor. Our limited jurisdiction prevents us from doing so. *See Kinney*, 367 F.3d at 348. Accordingly, we reject such challenges.

We also do not have jurisdiction to decide whether the district court erroneously considered hearsay evidence in denying Appellants' motion for summary judgment. Appellants challenge the admission of two statements, made by Brito-Hatcher and Powers, respectively, purporting to prove that the Board had a practice of acting contrary to policy. For the purposes of deciding this interlocutory appeal, our jurisdiction over challenges to the admissibility of evidence extends only to evidence that is "critical" to the district court's denial of a summary judgment motion. *See Mersch v. City of Dall.*, 207 F.3d 732, 734-35 (5th Cir. 2000). Further, we only have jurisdiction over "immunit[ies] from suit," not over "mere defense[s] to liability." *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43 (1995).

These standards are not met here. The assertion that officials were not acting pursuant to official policy for the purposes of § 1983 liability "ranks as a 'mere defense to liability.'" *Id. (*citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The district court cited the challenged evidence to support its conclusion that fact issues remained as to whether the Board had acted pursuant to official policy. Appellants' contention that the district court erred in this respect is thus only a "defense to liability." *See id.* Because we lack jurisdiction over "defenses to liability" at this stage of the proceedings, we cannot review whether the district court appropriately considered the challenged evidence when deciding whether appellants were acting pursuant to official policy.

Appellants' attempt to avoid this jurisdictional limitation is unavailing. Appellants argue that, in addition to providing support for the district court's determination that the Board acted pursuant to official policy, the challenged evidence also led the district court "to infer that the Trustees were generally bad men who must have retaliated somehow when Juarez refused to join them." In effect, they argue that the district court considered the challenged evidence without citing it when the court found that the fourth prong of the First

No. 10-40611

Amendment retaliation test was satisfied.        This argument lacks merit.  The district court's order explained its basis for ruling that Appellants had not defeated summary judgment with respect to each element of a First Amendment retaliation claim.  The explanation offered by the district court demonstrates that the district court found a bona fide factual dispute regarding whether the Board's actions caused Juarez's adverse employment decision, even without the "bad men" inferences purportedly drawn by the district court.  Specifically, the district court relied in part on an affidavit from former BISD Trustee Pat Lehman regarding the Board's practices, the admissibility of which is not challenged, in determining that the Board had a practice of evading guidelines. Because the determination of the district court was supported by other evidence besides the items challenged by the Appellants, the challenged evidence was not "critical" to the district court's denial of the motion for summary judgment on the elements of a First Amendment retaliation claim.  We therefore do not have jurisdiction to conduct an interlocutory review of the district court's consideration of hearsay evidence.

## 2.

We have jurisdiction to consider two of Appellants' contentions.  First, Appellants contend that, under Texas law, the Board did not have the ability to renew Juarez's contract *sua sponte* and therefore was not responsible for the adverse employment decision that Juarez complains of.  The district court, however, held that there was a genuine issue of material fact with respect to whether the Board exercised such authority.  The district court based this ruling on evidence indicating that the Board had in previous instances assumed authority beyond its apparent power:

> According to the allegations and evidentiary submissions of the Plaintiff, however, the Trustee Defendants and the Superintendent routinely committed acts contrary to the way a school system is supposed to act. This includes threatening Plaintiff with nonrenewal of his contract if he

did not falsify a grievance against Defendant Gonzales and Defendant Gonzales's seeking the Plaintiff's resignation or else be fired himself. The taped conversations and Lehman affidavit, submitted by Plaintiff, also support the notion that the Trustee Defendants and the Superintendent were not strictly following official procedures. Simply because the Trustee Defendants did not formally take action to nonrenew Plaintiff's contract does not mean they took no action.

For these reasons, the district court determined that there was a genuine issue of fact with respect to whether the Board had previously acted contrary to policy guidelines. Our limited jurisdiction prevents us from reviewing the district court's conclusion that Juarez presented sufficient evidence to create a genuine issue of fact, but it permits us to determine whether the facts relied upon by the district court were "material" to its legal conclusion. *Kinney*, 367 F.3d at 347. To do this, we must decide whether evidence tending to show a practice of acting contrary to established policy was material to the district court's denial of summary judgment. We hold that it is. Because Appellants argued that BISD's policy required that the superintendent make recommendations regarding contract renewals, and that this BISD policy established Appellants' entitlement to summary judgment, a previous practice of violating policy guidelines with respect to employment issues was material to whether the Board was responsible for Juarez's adverse employment decision. Accordingly, we will not disturb the district court's determination that a genuine issue of material fact exists regarding Juarez's claim.

Appellants further maintain that the district court erred in determining that a school board can make an adverse employment decision in the absence of a formal vote. The district court concluded that an issue of fact existed as to whether Appellants entered into an informal agreement to refuse to renew Appellee's contract. Appellants argue, in essence, that even if such an agreement existed, it would not rise to the level of retaliation for protected speech under Fifth Circuit precedent. Because this contention also concerns the

"legal significance" of facts, we have jurisdiction to consider it. *Kinney*, 367 F.3d at 348.

Appellants argue that "adverse employment decisions" can only occur through formal votes. They note that for a defendant to be liable under § 1983 for retaliation, the defendant must have been the "final decision-maker." *See Johnson v. State of La.*, 369 F.3d 826, 831 (5th Cir. 2004). Appellants also point to a case in which a governmental body was held not to be the "final decision-maker" when it did not vote. *See James v. Tex. Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008). However, neither of these cases held that the "adverse employment decisions" of collective bodies can only result from recorded votes. Such a rule finds support neither from our case law nor from the purposes of § 1983.

Instead, our precedent indicates that informal decisions such as the alleged agreement among members of the Board can be "adverse employment decisions" subject to the same protections as formal decisions. In *James*, this court considered a First Amendment retaliation claim brought by a municipal employee against county commissioners. We granted summary judgment in favor of the commissioners because we determined that the commissioners were not the final decision-maker with respect to that particular employment decision. *Id.* at 374. *James* does not, however, stand for the proposition that final decision-makers always hold formal votes. While we pointed to evidence indicating that the commissioners had not voted, the lack of a formal vote was just one item of evidence we considered in deciding whether the commissioners were the final decision-maker. *Id.* We provided no indication that we considered the lack of a vote conclusive. *See id.* In addition, we reviewed evidence presented by the employee to determine whether the commissioners had entered into an "agreement" to fire the employee. *See id.* While we did not find sufficient evidence of an "agreement" to defeat summary judgment, our

willingness to consider such evidence of an "agreement" demonstrates our belief that something less than a formal vote can serve as the basis for an adverse employment decision.

In related contexts, this court has applied similar reasoning. We have written, for instance, that informal governmental policies can establish § 1983 liability against individuals acting in their official capacity to the same extent as formal governmental policies can. *See Johnson v. Rodriguez*, 110 F.3d 299, 312 (5th Cir. 1997). This further supports the conclusion that deprivations subject to § 1983 liability do not result only from formal government actions. *See id.*

Additionally, a rule that punishes formal retaliation but foregoes punishment when the same end is accomplished informally would undercut the purpose of § 1983. Such a rule would only encourage municipalities to conduct their business off-the-record. Given that such an incentive structure would likely make state abuses of power more common rather than less, the Appellants' proposed rule does not promote the purposes envisioned by Congress when it enacted liability under § 1983. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.")

For these reasons, we will not extend our precedent to exempt decisions made through informal procedures from the category of "adverse employment decisions" that can result in liability under § 1983. Even if an adverse governmental decision does not result from a formal vote, the "final decision-maker" responsible for that adverse employment decision is subject to individual liability if her decision was motivated by impermissible considerations.[3]

---

[3]We emphasize that this holding is narrow. While we hold that adverse employment actions need not result from formal votes, our limited jurisdiction prevents

No. 10-40611

## B.

Finding no error in the district court's holding that genuine issues of fact exist with respect to whether Appellants violated Appellee's First Amendment rights, we next consider whether Appellants are entitled to qualified immunity. Officials are shielded from liability for civil damages as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Kinney*, 367 F.3d at 350 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

Appellants have not shown their entitlement to qualified immunity at this stage of the proceedings. Appellee's retaliation claim is straightforward. He alleges that because he informed the FBI of illegal activities, the Appellants entered into an agreement not to extend Appellee's contract. Assuming Appellee's allegations are true, *Kinney*, 367 F.3d at 348, such conduct would fall well within the clearly established elements of retaliation in violation of Appellee's First Amendment rights. With respect to the issues we can consider on this appeal, the only distinction between this case and the previous cases we have decided is the fact that Appellants did not formally vote when making the alleged adverse employment decision. That this court has not previously

---

us from evaluating the sufficiency of Appellee's evidence. It is for the district court to decide on remand whether Appellee has shown that Appellants' conduct satisfied each of the elements of a retaliation claim under the First Amendment.

considered an identical fact pattern does not mean that a litigant's rights were not clearly established. *See id.* at 350. As long as the officials received fair notice that their conduct violated the litigant's rights, the right was clearly established. *See id.* In this case, it would have been unreasonable for the Appellants to believe that the absence of a formal vote would absolve them of liability. As we explained above, the conclusion that informal actions can result in liability follows clearly from the precedent of this court and the Supreme Court. This was sufficient to provide Appellants with fair notice that even an informal decision to retaliate against Appellee would violate Appellee's First Amendment rights. Accordingly, the district court did not err when it denied summary judgment on Appellants' qualified immunity defense.

## III.

For these reasons, the appeal is DISMISSED in part, and the district court's order is AFFIRMED in part.