# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2022

Lyle W. Cayce
Clerk

No. 22-60123

Harold Lewis,

*Plaintiff—Appellant*,

*versus*

Panola County, Mississippi; Shane Phelps, Individually, and In His Official Capacity as Sheriff of Panola County, Mississippi,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:20-CV-223

Before Higginbotham, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Harold Lewis appeals the district court's grant of summary judgment against his First Amendment retaliation claim. Lewis alleges he was not hired as a Panola County deputy sheriff because he made public statements supporting a political opponent of Panola County Sheriff Shane Phelps and

---

\* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60123

supporting his own candidacy for supervisor against Phelps's close friend. Finding that Lewis failed to provide sufficient evidence to maintain his claim, the district court granted summary judgment to Panola County and Phelps. We AFFIRM.

## I.

Lewis began working for Panola County as a deputy sheriff in April 2014. At the time, Dennis Darby served as the Panola County sheriff. In 2019, Phelps ran against Darby for the sheriff position and Lewis ran against Phelps's friend, James Birge, for District 1 Supervisor. In October 2019, during a rally at a fire station that Phelps also attended, Lewis spoke publicly in support of his own candidacy and in support of Darby. In November 2019, Phelps won the sheriff election and Birge won the District 1 Supervisor election. Phelps, as sheriff-elect, then informed all Panola County Sheriff's Department employees they were to reapply for their positions if they wished to continue working under his administration. Lewis applied for a deputy sheriff position.

Phelps created a "hire" list of individuals to be hired when Phelps assumed office on January 6, 2020. The incoming major, who prevailed in the same election, drafted an unofficial "no-hire" list, which included Lewis's name. The outgoing chief deputy acquired the no-hire list at a Panola County board of supervisors meeting on December 18, 2019, and told Lewis his name was not on the list.[1] Lewis, concerned that Phelps could alter their police certifications, submitted a letter of resignation that same day. Phelps assumed office in January, and Lewis was not interviewed or rehired.

---

[1] Phelps and the major contend that they did not intend for the no-hire list to be disseminated to other persons.

No. 22-60123

Lewis brought a First Amendment retaliation claim under 42 U.S.C. § 1983 against Panola County and Phelps (collectively "Defendants"), individually and in his official capacity as sheriff, alleging that Lewis experienced unlawful retaliation for exercising his First Amendment rights. The district court found that Lewis failed to provide sufficient evidence to maintain the claim and granted summary judgment to Defendants.

## II.

"We review a grant of summary judgment *de novo*."[2] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] When reviewing summary judgment appeals, we view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.[4] But conclusory allegations, speculation, and unsubstantiated assertions will not survive summary judgment.[5]

## III.

For a First Amendment retaliation claim, a plaintiff must show that "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's

---

[2] *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) (quoting *Valderas v. City of Lubbock*, 937 F.3d 384, 388 (5th Cir. 2019)).

[3] FED. R. CIV. P. 56(a).

[4] *Batyukova*, 994 F.3d at 724.

[5] *Id.*

No. 22-60123

conduct."[6] The parties do not dispute that Lewis's speech involved a matter of public concern and that Lewis's interest in speaking outweighed the County's interest in promoting efficiency. The only disputed issues are (1) whether Lewis suffered an adverse employment decision and (2) whether Lewis's protected speech motivated Defendants' conduct.

Defendants argue that Lewis did not suffer an adverse employment decision because he resigned.[7] But Lewis's retaliation claim is for a failure to hire, not for termination. As refusal to hire constitutes an adverse employment decision for First Amendment retaliation purposes,[8] Lewis has satisfied this requirement.

All that is left is whether Lewis presented enough evidence that a reasonable juror could conclude that Lewis's protected speech was a substantial or motivating factor in the Defendants' decision to not hire Lewis. "Specifically, [the protected speech] must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."[9] To establish this causation element, Lewis "must present either 'direct evidence of retaliation' or 'circumstantial evidence creating a rebuttable presumption of retaliation.'"[10]

---

[6] *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015) (quoting *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc)).

[7] Defendants argued below that resigning "effectively removed [Lewis's] application from consideration." However, Defendants did not provide any authority to support that assertion and did not raise it on appeal.

[8] *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011).

[9] *Batyukova*, 994 F.3d at 730 (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)).

[10] *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007) (quoting *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414–15 (5th Cir. 2003), *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010)).

No. 22-60123

Lewis argues that the causal connection is established by the temporal proximity of his protected activity and Defendants' decision to not hire him. While "[c]lose timing between an employee's protected activity and an adverse employment action can be a sufficient basis for a court to find a causal connection required to make out a *prima facie* case of retaliation[,]" it "should be viewed in the context of other evidence."[11] Here, the timing alone is insufficient circumstantial evidence from which a retaliatory motive can be inferred from the context of other evidence. For one, *all* current deputies were asked to reapply for their positions. Of the more than 100 applicants, only 20–30 were hired. Defendants assert that politics played no role in their hiring decision and submitted affidavits of deputies that openly supported Phelps's opponent that Phelps nevertheless hired. Indeed, Phelps hired more deputies that supported his opponent than supported him. One of Phelps's hires who was originally on the no-hire list and an open supporter of Darby has since been promoted under the Phelps administration.

Finally, Defendants provide a non-retaliatory motive for not hiring Lewis. "A First Amendment retaliation claim fails if the 'action would have been taken anyway.'"[12] Defendants argue they did not hire Lewis because of "his multiple shortcomings as an officer of the Law." Specifically, Defendants reference a recorded 911 call from June 2019, in which they allege Lewis "refused to go" assist an officer in danger "because he was eating." Lewis asserts he did not "refuse" to go, but instead asked the dispatcher to send someone else because he was "in the drive-thru lane at a Wendy's" that "had a guard rail that prevented cars from leaving" and other deputies were

---

[11] *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x. 447, 454 (5th Cir. 2013) (unpublished) (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).

[12] *Batyukova*, 994 F.3d at 730 (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

closer. Either way, Phelps testified, "if I had been Sheriff then, I would have fired him right then on the spot that night."[13] Defendants also provided affidavits from officers who previously worked with Lewis, describing him as lacking concern for fellow officers, "unprofessional," untrustworthy, "not dependable," and someone with whom they would not want to work.

Even if we assume, *arguendo*, that Lewis made a *prima facie* case of unlawful retaliation, Lewis failed to provide any evidence that Defendants' non-retaliation explanation is merely pretextual.[14] Lewis alleges that Defendants were "sandbagging" him—withholding their justifications for not hiring him during discovery, then introducing them at the summary judgment stage. But allegations of improperly withheld information are "discovery complaint[s] and . . . not evidence of pretext."[15] And, Lewis not only failed to move to compel discovery of such information, the district court noted its conclusion was "largely based" on Phelps's deposition testimony.

While mindful of this Court's guidance that "summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate,"[16] Lewis failed to create a fact issue as to whether Phelps's reason for not hiring him is pretextual.

---

[13] It follows that if Phelps did not hire Lewis because of this June 2019 incident, the fact that he did not interview Lewis does not create a fact issue regarding pretext.

[14] *See Haverda v. Hays County*, 723 F.3d 586, 591–92 (5th Cir. 2013) (holding that when defendants provide an explanation that they would not have hired a plaintiff regardless of his protected conduct, plaintiff must present some evidence that defendants' explanation is merely pretextual).

[15] *See Glover v. City of Dallas*, 221 F. App'x 311, 313 (5th Cir. 2007) (unpublished per curiam).

[16] *Haverda*, 723 F.3d at 595.

No. 22-60123

\*\*\*\*

The district court's grant of summary judgment is AFFIRMED.