**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 97-31118
_____

KENNETH M. LANG,

Plaintiff-Appellant,

versus

PATRICK E. FRENCH,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana

_____

September 4, 1998

Before WIENER, BARKSDALE, and, DeMOSS Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Kenneth M. Lang appeals the district court's grant of summary judgment in favor of Defendant-Appellee Charles E. French. Lang brought suit in district court seeking to enforce a restitution order issued by the National Association of Security Dealers ("NASD") and affirmed by order of the Securities Exchange Commission ("SEC"), disciplining French — Lang's former investment advisor — for violating the NASD's Rules of Fair Practice. The court dismissed Lang's suit on the ground that it was without jurisdiction to enforce a restitution order entered pursuant to the NASD's self-regulatory disciplinary process. Despite concluding that the Securities and Exchange Act of 1934

1

("the Exchange Act") explicitly contemplates such enforcement authority, we nonetheless affirm, raising the issue of standing <u>sua sponte</u> and determining that Lang's suit is jurisdictionally defective for his lack of standing.

I

FACTS AND PROCEEDINGS

The facts are not in dispute. French, an NASD-registered securities representative, operated a Metairie, Louisiana satellite office of LaSalle St., a Chicago-based broker-dealer. Lang opened a LaSalle St. account through French in 1989. Two years later, French advised Lang to invest in First Care Medical Corporation ("First Care") by purchasing an interest in the company from a doctor who was purportedly "getting out." Lang paid the doctor $50,000, in exchange for which he received, <u>inter alia</u>, a promissory note from First Care and First Care stock certificates as collateral. First Care filed for bankruptcy protection in April 1993.

In July 1993, Lang requested an investigation by the NASD into French's conduct in recommending the First Care investment. Following an investigation, the NASD issued a formal complaint charging, <u>inter alia</u>, that French induced Lang to purchase the First Care promissory note by making misrepresentations of material fact and by failing to provide disclosure adequate for Lang to make a fully informed investment decision.

The NASD initiated disciplinary proceedings against French for violations of the association's Rules of Fair Practice.

2

Specifically, Lang was charged with violating Article III, Sections 1 and 18 of the Rules. Section 1 provides: "A member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade."[1] Section 18 provides: "No member shall effect any transaction in, or induce the purchase or sale of, any security by means of any manipulative, deceptive or other fraudulent device or contrivance."[2]

Following a hearing in which French was represented by counsel, the NASD's District Business Conduct Committee found, inter alia, that French had engaged in a scheme to defraud Lang, in violation of the Rules of Fair Practice. The district committee censured French, fined him $15,000, and barred him from associating in any capacity with any member of the NASD. The committee also ordered French to pay restitution to Lang in the amount of $50,000, plus simple interest at the rate of 9% per annum from September 3, 1991 through the date of full payment.

French appealed to the National Business Conduct Committee, which affirmed the district committee. He then appealed the national committee's affirmance to the SEC, which, after an independent review of the record and the briefs filed, issued an opinion and order sustaining the action taken by the NASD. French did not appeal the SEC order to either the Fifth or D.C. Circuit

---

[1] 1997 NASD Manual: Conduct Rules (CCH) ¶ 4111 (currently designated as Rule 2110).

[2] Id. ¶ 4141 (currently designated as Rule 2120).

3

Court of Appeals, as authorized under the Exchange Act.[3]

In November 1996, Lang brought an action in district court seeking judicial enforcement of the restitution facet of the disciplinary action taken by the NASD and affirmed by the SEC. Specifically, Lang's complaint prayed for a "judgment in his favor enforcing the orders of the NASD and the SEC and ordering [French] to pay [Lang the amount mandated by the NASD pursuant to its restitution order]." Following French's failure to respond to Lang's Request for Admissions, Lang filed a motion for summary judgment. The district court denied the motion, holding that it lacked jurisdiction to enforce SEC orders affirming NASD disciplinary actions. Armed with the court's ruling, French filed a motion to dismiss, which the court treated as a summary judgment motion and granted. Lang timely appealed.

## II

## ANALYSIS

A.   STANDARD OF REVIEW

We review grants of summary judgment <u>de</u> <u>novo</u>, applying the same standards as the district court.[4] When, however, "this Court finds 'an adequate, independent basis' for the imposition of summary judgment, the district court's judgment may be affirmed 'regardless of the correctness of the district court's rulings.'"[5]

---

[3]<u>See</u> Exchange Act § 25(a)(1), 15 U.S.C. § 78y(a)(1) (1994).

[4]<u>Melton v. Teacher's Ins. & Annuity Ass'n of America</u>, 114 F.3d 557, 559 (5th Cir. 1997).

[5]<u>Hetzel v. Bethlehem Steel Corp.</u>, 50 F.3d 360, 363 (5th Cir. 1995) (citing <u>Schuster v. Martin</u>, 861 F.2d 1369, 1371 (5th Cir.

4

B.   APPLICABLE LAW

Lang's claim raises novel issues on appeal, the resolution of which must begin with an understanding of the NASD disciplinary process and federal regulation of the over-the-counter ("OTC") securities markets.  The NASD, a private nonprofit corporation organized under the laws of Delaware, is registered with the SEC as a national securities association.  As a prerequisite to its registration under the Exchange Act, the NASD was required to promulgate association rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade . . . and, in general, to protect investors and the public interest."[6]  To this end, the NASD adopted the Rules of Fair Practice, which govern the conduct of its members and associates of its members.

Beyond the adoption of professional rules, the Exchange Act requires the NASD to enforce compliance with those rules and, more broadly, with the "provisions of [the Exchange Act], the rules and regulations thereunder, [and] the rules of the Municipal Securities Regulation Board."[7]  As mandated by the Exchange Act, the NASD has implemented a "fair procedure for the disciplining of members and persons associated with members"[8] suspected of violating the act's legal or ethical precepts.  The Rules of Fair Practice, together

1988); Degan v. Ford Motor Co., 869 F.2d 889, 892 (5th Cir. 1989)).

[6]Exchange Act, § 15A(b)(6), 15 U.S.C. § 78o-3(b)(6) (1994).

[7]Exchange Act, § 15A(b)(7), 15 U.S.C. § 78o-3(b)(7) (1994).

[8]Exchange Act, § 15A(b)(8), 15 U.S.C. § 78o-3(b)(8) (1994).

with a Code of Procedure, set forth the disciplinary framework within which complaints are handled and members are disciplined.

The Exchange Act also requires the NASD's rules to provide for the imposition of sanctions when violations are found. NASD sanctions may include, "expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or <u>any other fitting sanction</u>."[9] Through its sanctioning authority, the NASD has been "delegated governmental power . . . to enforce, at (its) own initiative, compliance by members of the [securities] industry with both the legal requirements laid down in the Exchange Act and ethical standards going beyond those requirements."[10]

Several tiers of administrative review are available to persons aggrieved in the disciplinary process,[11] and disciplinary orders are reviewable by the SEC after administrative remedies within the NASD are exhausted.[12] Following a <u>de novo</u> determination of the facts and the law and an independent decision on the violation and the penalty,[13] the SEC is authorized to affirm,

---

[9]Exchange Act, § 15A(b)(7), 15 U.S.C. § 78o-3(b)(7) (1994) (emphasis added).

[10]<u>Merrill Lynch, Pierce, Fenner, & Smith v. National Ass'n of Sec. Dealers, Inc.</u>, 616 F.2d 1363, 1367 (5th Cir. 1980) (quoting S. REP. NO. 94-75, 94th Cong., 1st Sess. 23 (1975), <u>reprinted in</u> 1975 U.S.C.C.A.N. 201).

[11]<u>See</u> LOUIS LOSS & JOEL SELIGMAN, SECURITIES REGULATION, 2820-2830 (3d ed. 1990).

[12]<u>See</u> <u>Royal Sec. Corp.</u>, 36 S.E.C. 275 (1955).

[13]<u>See</u> <u>Shultz v. Securities & Exch. Comm'n</u>, 614 F.2d 561, 568 (7th Cir. 1980).

6

modify, or set aside any sanction, and, if necessary, remand to the NASD for further proceedings.[14] Final SEC orders are appealable to the United States Court of Appeals.[15] On appeal from an SEC order, "the court [of appeals] has jurisdiction . . . to affirm or modify and enforce or to set aside the order in whole or in part."[16]

Aside from its role as an adjudicator in the NASD's disciplinary process, the SEC may "take direct action against the NASD to ensure that the association enforces its own rules and the statutory provisions regarding disciplinary proceedings."[17] Section 21(e) of the Exchange Act was specifically amended in 1975 to authorize the SEC to "institute injunctive actions to enjoin a violation of the rules of a self-regulatory organization."[18] Significantly, section 21(e) contains a provision explicitly vesting district courts with jurisdiction, on application of the SEC, to issue "orders commanding . . . any person to comply with [the Exchange Act], [and] the rules, regulations, and orders thereunder[.]"[19] Thus, the SEC is authorized not only to enjoin violations of the Rules of Fair Practice but also to enforce

---

[14]Exchange Act § 19(e), 15 U.S.C. § 78s(e) (1994).

[15]Exchange Act § 25(a)(1), 15 U.S.C. § 78y(a)(1) (1994).

[16]Exchange Act § 25(a)(3), 15 U.S.C. § 78y(a)(3) (1994).

[17]Merrill Lynch, 616 F.2d at 1367; see Exchange Act § 21(e), 15 U.S.C. § 78u(e) (1994).

[18]S. REP. NO. 94-75, 94th Cong., 1st Sess. 135 (1975), reprinted in 1975 U.S.C.C.A.N. 312.

[19]Exchange Act § 21(e)(1), 15 U.S.C. § 78u(e)(1) (1994) (emphasis added).

compliance with SEC disciplinary orders based on violations of those rules. And, we are aware of nothing that would except restitution orders from this authorization.

The joint roles taken by the NASD and the SEC in the regulation of OTC securities transactions reflects a congressional intent "to establish a 'cooperative regulation' where [securities] associations would regulate themselves under the supervision of the SEC."[20] The Fourth Circuit recently offered the following observations on the cooperative regulatory scheme governing the OTC markets:

> The NASD's proceedings are intended to provide front-line, less formal enforcement of rules governing day-to-day operations of [OTC] securities markets. On the other hand, the SEC administrative proceedings cover all markets and organizations and are designed to prevent and punish more serious securities laws violations which, as the SEC determines, must be redressed in the public interest . . . .
> Congress' decision to give both the NASD and the SEC overlapping disciplinary authority reflects a considered decision to bring two separate vantage points to enforcement efforts — one from the industry itself and one from the regulator. Consistent with these varying, but cooperative roles, the SEC thus acts as supervisor and adjudicator of the NASD's actions but as prosecutor and adjudicator in its own enforcement efforts.[21]

Against this backdrop, we can resolve the question whether disciplinary sanctions issued by the NASD and upheld by order of

---

[20]Jones v. Securities & Exch. Comm'n, 115 F.3d 1173, 1179 (4th Cir. 1997) (quoting S. REP. NO. 75-1455, at 3-4; H.R. REP. NO. 75-2307, at 4-5), cert. denied, — U.S. —, 118 S.Ct. 1512, 140 L.Ed.2d 666 (1998).

[21]Id. at 1180.

8

the SEC[22] are judicially cognizable.  In opposing dismissal in the district court, Lang argued that section 27 of the Exchange Act provides the jurisdictional foundation for judicial enforcement of disciplinary sanctions embodied in SEC orders.  Section 27 of the Exchange Act grants district courts exclusive jurisdiction over suits brought "to enforce any liability or duty created by [the act] or the rules and regulations thereunder."[23]

The district court rejected Lang's argument, relying on various grounds which, although admittedly not directly on point, nonetheless indicated to the court "that it was not congress' intent for the district court to enforce this type of disciplinary order."  The court observed that the United States Courts of Appeal have exclusive jurisdiction over appeals from SEC orders.[24]  The district court reasoned that as it would have no power to entertain the matter if French — the party aggrieved by the order — were seeking relief, its jurisdiction to entertain any action based on disciplinary measures ordered by the SEC was doubtful.[25]

---

[22]As the NASD's disciplinary order was affirmed by the SEC, we are not presented with the question whether NASD orders are judicially cognizable in and of themselves, without the independent review and ratification of the SEC.

[23]15 U.S.C. § 78aa (1994).

[24]See Exchange Act § 25(a)(1), 15 U.S.C. § 78y(a)(1) (1994).

[25]The court relied on Maschler v. National Ass'n of Sec. Dealers, Inc., 827 F.Supp 131 (E.D.N.Y. 1993), in support of its conclusion.  In Maschler, plaintiff, an NASD member, brought suit in district court challenging disciplinary action taken against it by the NASD.  Id. at 132.  The plaintiff predicated jurisdiction on, inter alia, section 27 of the Exchange Act, but the court dismissed the suit, finding that section 25(a)(1) limits judicial review of final disciplinary orders of the SEC exclusively to the

Second, the district court inferred its lack of enforcement authority from the fact that section 27 of the Exchange Act creates no private cause of action with respect to the Rules of Fair Practice. Because Lang could not assert a cause of action directly against French based on NASD rule violations, reasoned the court, he could not do so indirectly by attempting to enforce a disciplinary judgment predicated on transgressions of those same rules.[26]

At the outset, we reiterate that the Exchange Act, as we read the statute, explicitly provides for district court jurisdiction over actions brought to enforce SEC-ordered sanctions. Section 21(e)(1) of the Exchange Act provides, in pertinent part:

> Upon application of the [SEC] the district
> courts of the United States . . . shall have

---

United States Courts of Appeal. Id.

[26]The court relied on Shahmirzadi v. Smith Barney, Harris Upham & Co., Inc., 636 F.Supp 49 (D.D.C. 1985), in support of its contention that there are no private rights of action for NASD rule violations. In so doing, the court failed to observe that the issue of implied rights under stock exchange or dealer association rules is far from settled. See Jablon v. Dean Witter & Co., 614 F.2d 677, 681 (9th Cir. 1980) (refusing to recognize implied rights); Shull v. Dain, Kalman & Quail, Inc., 561 F.2d 152, 160 (8th Cir. 1977) (refusing to recognize private right of action in the absence of a finding of fraud), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); Securities & Exch. Comm'n v. First Sec. Co., 463 F.2d 981, 988 (7th Cir.) (noting that rule violations provide the basis for private actions where the rule violated serves to protect the public), cert. denied, 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972); Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 182 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (holding that the question whether "to imply federal civil liability for violation of exchange or dealer association rules by a member cannot be determined on [an] all-or-nothing basis"). We have yet to comment on the viability of private causes of action under such rules, and we are not presented with the opportunity to do so now.

> jurisdiction to issue writs of mandamus, injunctions, <u>and</u> <u>orders</u> <u>commanding</u> (1) <u>any</u> <u>person</u> <u>to</u> <u>comply</u> <u>with</u> the provisions of [the Exchange Act], the rules, regulations, <u>and</u> <u>orders</u> <u>thereunder</u>, the rules of a national securities exchange or registered securities association of which such person is a member or person associated with a member . . . .[27]

Inasmuch as the SEC's affirmance, <u>by</u> <u>order</u>, of sanctions imposed by the NASD operates as an "order" to the same degree and in the same fashion as do orders issued by the agency pursuant to its own enforcement initiatives, this provision indisputably endows district courts with the enforcement authority at issue in this case. The fact that the SEC's order derives from the agency's adjudicatory role in the NASD's self-regulating disciplinary process — as opposed to its more direct regulatory role as the agency charged with primary responsibility for enforcing the securities laws — has no bearing on the jurisdictional grant embodied in section 21(e)(1). There is no adjudicatory-enforcement dichotomy with respect to circuit court jurisdiction over final SEC orders; sanctions ordered by the SEC are reviewable by the circuit courts under section 25(a)(1) of the Exchange Act without reference to the procedural posture of the sanctions on appeal. Internal consistency under the Exchange Act mandates a similar construction of section 21(e)(1).

Given the district court's enforcement authority over SEC orders, the question reduces itself to whether a private litigant has standing to instigate such enforcement in that court. Raising

---

[27]Exchange Act § 21(e)(1), 15 U.S.C. § 78u(e)(1) (1994) (emphasis added).

the issue <u>sua sponte</u>,[28] we determine that Lang does not have standing to pursue the relief sought in the district court.

As an initial observation, we note that the circumstances surrounding this case make it unique. We are satisfied that, but for the facts that (a) restitution was one of the sanctions ordered by the NASD, and (b) the statute of limitations appears to have run on a Rule 10b-5 fraud claim, Lang would not have taken the NASD/SEC disciplinary order enforcement route to recover from French. The atypical nature of the civil action fashioned by Lang in the district court becomes apparent when the viability of private "enforcement" actions outside the context of restitution orders is considered. Of the several disciplinary sanctions available to the NASD and the SEC —— all of which are intended to discourage and punish legal and ethical misconduct —— only restitution orders have the ancillary effect of conferring a private benefit on the victims of such malfeasance. If, for example, Lang had sought to "enforce" any other aspect of the SEC's disciplinary order —— e.g., the member-association bar —— we would be confronted with a situation in which a private individual was attempting to exercise governmental or quasi-governmental authority in the promotion of essentially public interests. We do not interpret the regulatory scheme created by the Exchange Act as permitting the SEC's

---

[28]<u>See</u> <u>In re Weaver</u>, 632 F.2d 461, 463 n. 6 (5th Cir. 1980) (noting that "[b]ecause standing is an element of the constitutional requirement of 'case or controversy,' lack of standing deprives the court of subject matter jurisdiction[,]" and, as a result, "objections to standing are never waived and must be raised by an appellate court <u>sua</u> <u>sponte</u>") (citing <u>Fairley v. Patterson</u>, 493 F.2d 598 (5th Cir. 1974)).

12

supervisory authority over the securities industry to be commandeered by private parties in this fashion.

Lang relies on the jurisdictional grant embodied in section 27 of the Exchange Act as the statutory basis for his private enforcement suit. Section 21(e)(1), however, expressly vests only the SEC with authority to apply to the district court for orders commanding compliance with the SEC's orders. Lang would nevertheless have us infer from the language of section 27 a parallel authority for private litigants to apply to the district court for enforcement of SEC orders.[29] Such an inference is implicitly foreclosed, though, by the plain language of section 21(e)(1), which names the SEC as the only authorized applicant for judicial enforcement of SEC orders. We view section 21(e)(1) as manifesting a congressional intent to reserve exclusively to the SEC the authority to seek district court enforcement of such

---

[29]To our knowledge, this case represents one of the only reported instances in which a litigant has relied on an SEC order to obtain private relief. In Pitofsky v. Brucker, 291 F.Supp. 321 (S.D.N.Y. 1966), plaintiff moved for summary judgment in his private action for damages under Rule 10b-5, resting his motion on the findings and opinion of the SEC, and a stop order previously issued by the agency based thereon. Id. The court refused to grant the motion, holding that summary judgment in a private action for damages for claimed violations of the Exchange Act and Rule 10b-5 could not be granted solely on the basis of the administrative findings, opinion and order of the SEC in a separate stop order proceeding. Id. In so holding, the court announced what it considered to be the dispositive rule: "[A]n agency determination does not relieve a plaintiff seeking a private remedy of the generally applicable requirement that he prove the elements of his case . . ., nor does it preclude the defendants . . . from attempting to establish their pleaded defenses." Id. (citations omitted). Lang moved for summary judgment in the instant case on even more unconventional grounds, asking the court to simply adopt the restitution order without asserting a private claim for damages under the Exchange Act, its rules or regulations.

13

orders.[30]

Lang argues to the contrary, insisting that congressional intent can only be effectuated through private enforcement requests such as his, as a denial of judicial relief would thwart what he characterizes as "the full realization of the self-regulation contemplated by the statutory scheme." We disagree. The Exchange Act does delegate substantial enforcement authority to self-regulatory organizations like the NASD, but the private enforcement mechanism advocated by Lang would go well beyond the system of cooperative regulation envisioned by Congress. Our refusal to recognize a private enforcement mechanism does not detract from the disciplinary goals of deterrence and investor protection. In the instant case, French has been barred from associating with any NASD member; and, as he has been removed from the securities industry, he poses no future threat to investors, regardless of whether Lang ever receives restitution.

Moreover, alternative means — including, most commonly, private civil actions for securities law violations — exist for ensuring that members of the securities industries are unable to profit from their own misconduct. And, in cases deemed by the agency to implicate the public's interest to such an extent as to warrant the procedure, the SEC could apply, pursuant to section

---

[30]See Liesen v. Louisiana Power & Light Co., 636 F.2d 94, 95 (5th Cir. 1981) (examining the enforcement scheme of the Atomic Energy Act, and determining that Congress prohibited private judicial enforcement of the act, relegating such enforcement requests to the exclusive jurisdiction of the Nuclear Regulatory Commission).

14

21(e)(1) of the Exchange Act, for an order of the district court commanding payment of the restitution previously ordered by the SEC.  We know of nothing that would have prevented the SEC from petitioning the district court for enforcement of the restitution "ordered" by the agency; yet, try as we may, we cannot discern standing for Lang to do so.

III

CONCLUSION

For the foregoing reasons, the decision of the district court is

AFFIRMED

15