# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2024

Lyle W. Cayce
Clerk

No. 23-10892

Timpy Ondrusek; Barbara Ann Ondrusek Wolfe,

*Plaintiffs—Appellants*,

*versus*

United States Army Corps of Engineers; Jonathan S. Stover, *District Commander, Fort Worth District, United States Army Corps of Engineers*; The City of Dallas,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-1874

_____

Before Higginbotham, Stewart, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

The United States Army Corps of Engineers, Defendant-Appellee, partnered with the City of Dallas, Texas, also a Defendant-Appellee, on a project called the Dallas Floodway Extension ("DFE"). The project plan was issued in 1999, as was an environmental impact statement ("EIS") under the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347 ("NEPA"). The EIS was supplemented in 2003. Design and implementation are ongoing.

No. 23-10892

Plaintiffs-Appellants Timpy Ondrusek and Barbara Ann Ondrusek Wolfe are the owners of real property that Dallas attempted to condemn for the DFE. They sued in federal district court for declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706 ("APA"), claiming that the Corps' failure to prepare a supplemental environmental impact statement ("SEIS") to account for new information, such as flood risk updates related to climate change and changes to engineering guidance following Hurricane Katrina, violated NEPA and the Clean Water Act, 33 U.S.C. §§ 1251–1389 ("CWA").

The district court determined on the pleadings that the case was not justiciable and dismissed the claims. We REVERSE and REMAND with respect to the Army Corps of Engineers, and AFFIRM with respect to the City of Dallas.

I.

A.

The Trinity River cuts across the City of Dallas. Several years ago, the Corps and the City embarked on the Trinity River Corridor Project, which was intended to assist with "flood protection, recreation, environmental restoration, [and] economic development." The City's roles included funding a portion of the project, as well as assisting with acquiring and providing land and rights of way.

One of the main components of the project was the DFE, which "include[d] the implementation of a chain of wetlands, as well as two levees—the Cadillac Heights Levee and the Lamar Levee." Though originally authorized in 1965, the DFE was deactivated; it was reactivated in 1990 following a severe flood on the condition of reevaluation "due to new environmental and economic criteria, as well as significant land use changes within the study area." As a result, the Corps published a General

2

Reevaluation Report and Integrated EIS in 1999. The Corps approved the plans described in the 1999 EIS in December 1999.

Environmental associations sued the Corps over the plan. *See Tex. Comm. on Nat. Res. v. Van Winkle*, 197 F. Supp. 2d 586, 591 n.2, 595 (N.D. Tex. 2002). It was determined that the Corps failed to address certain cumulative impacts as required under 40 C.F.R. § 1508. *Id.* at 618–19. The district court remanded to the Corps and enjoined construction. *Id.* at 622. The Corps issued a final SEIS in 2003. The district court dissolved the injunction, and the project resumed. *See Tex. Comm. on Nat. Res. v. Van Winkle*, No. 4:00-CV-384-Y, 2004 WL 980392, at *4 (N.D. Tex. May 5, 2004).

It became clear that the DFE would intersect with the Appellants' property. In September 2021, the City of Dallas sent a letter informing the Appellants that a portion of their vacant lot was needed for the Cadillac Heights Levee. The City offered $497,034 in compensation, but agreement was not reached. The City initiated condemnation proceedings.

## B.

In August 2022, Ondrusek and Wolfe filed suit against the Corps and the City of Dallas for declaratory and injunctive relief under the APA, claiming that the Corps' ongoing work on the DFE failed to comply with NEPA and the CWA. With respect to NEPA, the plaintiffs alleged that the Corps was required to prepare another SEIS to account for additional information, including changes to engineering guidance following Hurricane Katrina. They further alleged that the Corps did not complete the analysis required under 40 C.F.R. § 230.11—a regulation implementing § 404 of the CWA—including an investigation of "secondary effects" on the Trinity River ecosystem.

These failures, the plaintiffs alleged, caused "a serious risk that environmental impacts will be overlooked," which would harm them because their property had a "geographical nexus to the project," "such that they can expect to suffer the environmental consequences the project may have." The alleged environmental consequences included threats of "unnecessary flooding, damage to surface and subsurface soils, surface and groundwater, and surrounding land contiguous to the completed DFE Project." The plaintiffs requested a remand to the Corps for additional factfinding and preparation of an SEIS, and a halt to construction in the interim.

The plaintiffs moved for preliminary relief. The district court denied the motion on the ground that the plaintiffs had not shown Article III standing, and dismissed the complaint without prejudice. The plaintiffs then filed an amended complaint, alleging additional theories of injury including "migration of the contaminants of concern" from flooding and thus "potential worsening of the environmental condition at the Property." They again sought preliminary relief. Again, the district court concluded that the case was not justiciable, noting that the levee design phase was "only 35 percent complete." The district court dismissed the case as unripe, without prejudice but denying leave to amend. The plaintiffs timely appealed.

## II.

"Questions of subject matter jurisdiction are reviewed de novo." *Harrison Cnty. v. U.S. Army Corps of Eng'rs*, 63 F.4th 458, 462 (5th Cir. 2023). To assess justiciability "on the basis of the pleadings, we must accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 350 (5th Cir. 2023) (quoting *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010)). "[A] suit will not be dismissed for lack of standing if there

are sufficient 'allegations of fact'—not proof—in the complaint or supporting affidavits." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 65 (1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

III.

The issues are whether the claims are ripe for adjudication, whether the plaintiffs have standing, and whether the complaint was untimely under the six-year statute of limitations codified at 28 U.S.C. § 2401(a). We address each in turn.

A.

We start with ripeness. Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).

To evaluate ripeness, we "balance[]" "the fitness of the issues for judicial decision" against "the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007) (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). In a challenge to agency action, we consider "whether the courts would benefit from further factual development of the issues presented," "whether judicial intervention would inappropriately interfere with further administrative action," and "whether delayed review would cause hardship to the plaintiffs." *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 245 (5th Cir. 2006) (quoting *Ohio*

No. 23-10892

*Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)). In a declaratory judgment action, we consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The district court determined that the case was unripe and dismissed for lack of Article III jurisdiction. On appeal, the Appellees do not defend the district court's ripeness ruling and focus instead on standing, and the Corps agreed at oral argument that the case was ripe. *See* Oral Argument at 19:15, *Ondrusek v. U.S. Army Corps of Eng'rs*, No. 23-10892 (5th Cir. June 5, 2024), https://www.ca5.uscourts.gov/OralArgRecordings/23/23-10892_6-5-2024.mp3 [hereinafter Oral Arg.]. Nonetheless, we must satisfy ourselves that there was original jurisdiction of the cause. *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

In our view, the claims are ripe for decision. The Corps' purported failure to comply with its NEPA obligations presents a present controversy that requires no "further factual development." *Coliseum Square*, 465 F.3d at 245; *cf. Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 81–82 (1978) ("Although it is true that no nuclear accident has yet occurred and that such an occurrence would eliminate much of the existing scientific uncertainty surrounding this subject, it would not, in our view, significantly advance our ability to deal with the legal issues presented nor aid us in their resolution."). "[A] person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure *at the time the failure takes place*, for the claim can never get riper." *Ohio Forestry*, 523 U.S. at 737 (emphasis added). That is because "NEPA . . . simply guarantees a particular *procedure*, not a particular *result*." *Id.* (emphases added).

6

> NEPA does not work by mandating that agencies achieve particular substantive environmental results. Rather, NEPA promotes its sweeping commitment to "prevent or eliminate damage to the environment and biosphere" by focusing Government and public attention on the environmental effects of proposed agency action. 42 U.S.C. § 4321. By so focusing agency attention, NEPA ensures that the agency will not act on incomplete information, only to regret its decision after it is too late to correct.

*Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989).

The procedural requirement at issue here is that "in certain circumstances an EIS must be supplemented." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 72 (2004) [hereinafter *SUWA*]. This duty is implicit in NEPA § 102(2). *Marsh*, 490 U.S. at 370–71 ("Preparation of [SEIS] statements . . . is at times necessary to satisfy the Act's 'action-forcing' purpose."); *see also id.* at 371 n.14. "This reading of the statute is supported by Council on Environmental Quality (CEQ) and Corps regulations." *Id.* at 372. "[T]he CEQ's regulations" impose "binding" duties on federal agencies. *Sierra Club v. Sigler*, 695 F.2d 957, 972 (5th Cir. 1983). In particular, 40 C.F.R. § 1502.09 "impose[s] a duty on all federal agencies to prepare supplements to either draft or final EIS's" when sufficiently substantial "new circumstances or information" about environmental impacts bear on the agency's analysis. *Marsh*, 490 U.S. at 372 (quoting 40 C.F.R. § 1502.9(c) (1987)).[1] And the Corps has adopted the CEQ's rules in

---

[1] The 2024 revisions to the CEQ regulations further clarified that "ongoing" action could require supplemental review. *Compare Marsh*, 490 U.S. at 372 n.16 (citing 40 C.F.R. § 1502.9(c) (1987)), *with* 40 C.F.R. § 1502.9(d) (2024). If the regulations had been substantially revised over the time period implicated in this suit, we might need to parse out applicability, since standing focuses on the time a suit is filed, *Davis v. FEC*, 554 U.S. 724, 734 (2008), ripeness focuses on "the situation now," *Reg'l Rail Reorganization Act*

its own regulations. 33 C.F.R. § 230.13(b); *see Marsh*, 490 U.S. at 372–73, 373 n.17. Thus, "[i]f there remains 'major Federal actio[n]' to occur, and if the new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered, a supplemental EIS must be prepared." *Id.* at 374.

In asserting that the Corps has not complied with this duty, the plaintiffs alleged a "failure to comply with NEPA procedure" which has already "take[n] place." *Ohio Forestry*, 523 U.S. at 737. On their theory, the DFE is an "ongoing 'major Federal action' that could require supplementation." *SUWA*, 542 U.S. at 73. But, they say, the Corps has unlawfully failed to prepare the SEIS required by NEPA, CEQ regulations, and the Corps' own rules in the face of new information (including the Corps' own standards and studies) about flood planning and climate risks. "In certain circumstances, agency inaction may be sufficiently final to make judicial review appropriate." *Sierra Club v. Peterson*, 228 F.3d 559, 568 (5th Cir. 2000) (en banc); *see also City of Seabrook v. Costle*, 659 F.2d 1371, 1373 (5th Cir. 1981). After all, a plaintiff who sues on a procedural right to challenge a "failure to prepare an environmental impact statement" may maintain a suit "even though the [major federal action] will not be completed for many years." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992).

The district court determined that any injury to the plaintiffs was speculative. The court reasoned that "Plaintiffs have not pointed to any specific flaws in the plans for the Levee, nor explained why they believe such flaws would lead to inadequate flood protection"—and "[b]ecause much is

---

*Cases*, 419 U.S. 102, 140 (1974), and on the merits the claim is that the Corps has failed to act. However, our analysis holds for any version of the regulations at issue.

still unknown about the Levee's design, Plaintiffs can offer only an 'attenuated chain of inferences' to support their claim that the Federal Defendants' actions put their environmental interests at risk." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

There is something to this reasoning, but at least at this point in the proceedings we think the level of conjecture is not too great. A plaintiff's interest in a case cannot be "too speculative for Article III purposes." *Defs. of Wildlife*, 504 U.S. at 564 n.2. But this bar against speculation does not mean that the courts are closed to claims based on potential risks of injury. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016). This is why we have said that in any NEPA case "the fact of actual damage . . . is somewhat speculative"—the whole "point of the lawsuit" is "to compel a completion of an environmental impact statement about the consequences of the project." *Save Our Wetlands, Inc. v. Sands*, 711 F.2d 634, 640 (5th Cir. 1983) (emphasis omitted). A plaintiff need only show "a risk that serious environmental impacts will be overlooked," *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 674 (5th Cir. 1992) (quoting *City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir. 1975)); *accord Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 665–66 (D.C. Cir. 1996) (en banc)—he need not present the court with the results of "the same environmental investigation that he seeks in his suit to compel the agency to undertake," *id.* (quoting *City of Davis*, 521 F.2d at 671).

Here, the plaintiffs have demonstrated "a sufficient geographical nexus to the site of the challenged project [such that they can] expect [] to suffer whatever environmental consequences the project may have." *Sabine River Auth.*, 951 F.2d at 674 (quoting *City of Davis*, 521 F.2d at 671). Moreover, the plaintiffs have explained those potential consequences at length. The amended complaint alleges that if updated climate models and

engineering standards are not used, the resulting deficiency in flood protection will result in flooding of the plaintiffs' land and migration of contaminants. The Corps is welcome to flyspeck these assertions later on, but at par value they state a plausible theory of a risk to the plaintiffs' environmental interests.[2]

Judicial decision in this case would not "inappropriately interfere with further administrative action." *Ohio Forestry*, 523 U.S. at 733. NEPA generally requires that the Corps consider the impacts of major actions *before* concluding them. *Cf. id.* at 735–36. If anything, delayed review poses a greater risk of interference by potentially forcing a reconsideration of plans even further underway. There has been no allegation that the Corps has reopened environmental review on its own as might imply a tentative or contingent judicial pronouncement on conclusions soon likely to shift. *Cf. Coliseum Square*, 465 F.3d at 245. Accordingly, enforcing NEPA's mandate now may "foster effective administration of the statute." *Texas*, 497 F.3d at 499 (quoting *Merchs. Fast Motor Lines, Inc. v. ICC*, 5 F.3d 911, 920 (5th Cir. 1993)).

Furthermore, delaying review would impose hardship on the plaintiffs. The district court viewed delay as unlikely to prove prejudicial, since "construction cannot go forward without a design." We understand the premise but respectfully part ways with the conclusion. We do not think the plaintiffs must wait to ask the Corps to reassess its plans until construction is a fait accompli.

---

[2] "This is not to say . . . that such allegations may not be challenged." *Gwaltney of Smithfield*, 484 U.S. at 65–66. It is of course open to the Corps to controvert the allegations and move for summary judgment on jurisdiction, or to put the plaintiffs to their burden of proof at a hearing on the issue (should one be held) or at trial. *See id.* at 66.

Ongoing resource commitments suggest that the DFE is moving ahead. It has been asserted that the Corps and Dallas made material changes to the DFE after the 2003 SEIS. And an agreement between Dallas and the Corps, as amended in 2019, required Dallas to undertake actions to implement the DFE at the Corps' direction and provided federal funding from the Bipartisan Budget Act of 2018, Pub. L. No. 115-123, 132 Stat. 64 (2018).

That the Corps may be pressing ahead without full consideration of environmental impacts, posing risks to the plaintiffs' environmental interests, indicates prejudice from delay. "[B]y focusing the agency's attention on the environmental consequences of a proposed project, NEPA ensures that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). Review is thus appropriate now, before the Rubicon has been crossed (or subjected to dredge/fill discharges).

## B.

We turn now to Article III standing.[3] To present a case or controversy suitable for determination by a federal court, a plaintiff must "claim to have suffered an injury that the defendant caused and the court can remedy." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Casillas v. Madison Ave. Associates, Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)). So "to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the

---

[3] While the district court's July 2023 order dismissed the case primarily on ripeness grounds, the order alluded to the elements of standing. Because the parties dispute standing, a jurisdictional issue, we choose to address it. *See Lang v. French*, 154 F.3d 217, 222 & n.28 (5th Cir. 1998).

injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.*

"[A]n individual can enforce a procedural right in court 'so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing.'" *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 543 (5th Cir. 2019) (quoting *Defs. of Wildlife*, 504 U.S. at 573 n.8). "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). But "a 'person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy.'" *Id.* (quoting *Defs. of Wildlife*, 504 U.S. at 572 n.7). Thus, "one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years." *Defs. of Wildlife*, 504 U.S. at 572 n.7.

i.

The "injury in fact" requirement "is designed to limit access to the courts to those 'who have a direct stake in the outcome.'" *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 556 (5th Cir. 1996) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)). "[A] 'threatened injury' will satisfy the 'injury in fact' requirement for standing." *Citizens for Clean Air & Clean Water in Brazoria Cnty. v. United States Dep't of Transp.*, 98 F.4th 178, 187 (5th Cir. 2024) (quoting *Cedar Point Oil*, 73 F.3d at 556). An

allegation that an administrative agency has "fail[ed] to satisfy a procedural requirement," *id.* (quoting *Ctr. for Biological Diversity*, 937 F.3d at 542), can thus establish standing when the failure "threatens [a] 'concrete interest,'" *id.* (quoting *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 426 (5th Cir. 2020)).

"[E]stablished precedent" recognizes concrete injury "in the context of animals and the environment." *La. Fair Hous. Action Ctr.*, 82 F.4th at 358 n.2 (Ho, J., concurring). Injuries to "aesthetic, conservational, and recreational" interests can provide the requisite concrete and justiciable stake. *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154 (1970)). That includes future, and thus contingent, risks to such interests. *Citizens in Brazoria Cnty.*, 98 F.4th at 187; *see Spokeo*, 578 U.S. at 341–42. A plaintiff who plausibly alleges that failure to comply with NEPA presents "a risk that serious environmental impacts will be overlooked" has thus alleged a concrete stake in having the agency reassess its decision. *Sabine River Auth.*, 951 F.2d at 674 (quoting *City of Davis*, 521 F.2d at 671).

As noted above, we do not require NEPA plaintiffs to show "actual damage" to their interests to a certainty. *Save Our Wetlands*, 711 F.2d at 640; *see also Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 503 (5th Cir. 2024) ("[T]he plaintiff need not 'establish with any certainty' that the procedural defect 'will cause' harm." (quoting *Defs. of Wildlife*, 504 U.S. at 572 n.7)). On the contrary, the whole "point of the lawsuit" is "to compel a completion of an environmental impact statement about the consequences of the project." *Save Our Wetlands*, 711 F.2d at 640.

But at the same time, "the party seeking review must himself have suffered an injury." *Morton*, 405 U.S. at 735. "The relevant showing for Article III standing is not injury to the environment but injury to the

plaintiff." *Friends of the Earth*, 528 U.S. at 169. Like one harmed by a cotenant's waste, however, a plaintiff can be individually injured on account of an interest in the environment "shared by the many rather than the few." *Morton*, 405 U.S. at 734; *see also Spokeo*, 578 U.S. at 339 n.7. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth*, 528 U.S. at 183 (quoting *Morton*, 405 U.S. at 735). Thus, in a NEPA suit, a typical way of demonstrating particularized injury is for a plaintiff to allege "a sufficient geographical nexus to the site of the challenged project [such that they can] expect [] to suffer whatever environmental consequences the project may have." *Sabine River Auth.*, 951 F.2d at 674 (quoting *City of Davis*, 521 F.2d at 671); *see also, e.g.*, *Citizens in Brazoria Cnty.*, 98 F.4th at 187.

That is the type of concrete and particularized risk alleged by the plaintiffs. The plaintiffs allege that the Corps' failure to prepare an SEIS creates "a serious risk that environmental impacts will be overlooked." The plaintiffs allege they would suffer the potential environmental consequences given the location of their property, which might include "unnecessary flooding, damage to surface and subsurface soils, surface and groundwater, and surrounding land contiguous to the completed DFE Project which Plaintiffs will continue to own" as well as "migration of the contaminants of concern" from the extra flooding and thus "potential worsening of the environmental condition at the Property."[4] Flooding, subsidence, and

---

[4] The Corps, citing *Florida Audubon Society*, 94 F.3d at 669, argues that since the risks of flooding "already existed . . . the Corps has done nothing to increase the flood risk on Plaintiffs' property." But, even assuming the relevant legal propositions, the complaint plausibly alleges the contrary and at this stage we accept those contentions. *See La. Fair Hous. Action Ctr.*, 82 F.4th at 350 (majority opinion).

migration of contaminants are concrete injuries to the plaintiffs' conservational interests in the environmental state of their own property. These injuries are particularized to the plaintiffs, who own the land. *See, e.g.*, *Save Our Cmty. v. EPA*, 971 F.2d 1155, 1160–61 (5th Cir. 1992). It would have been enough if the land in issue were merely open to the public and they sometimes used it. *See, e.g.*, *Friends of the Earth*, 528 U.S. at 183; *Defs. of Wildlife*, 504 U.S. at 562–63; *Morton*, 405 U.S. at 735.

It does not foreclose the plaintiffs' standing that their asserted interests involve risks that may be some distance in the future. To be sure, "environmental interests cannot support an injury in fact unless they have been actually harmed or imminently will be." *Ctr. for Biological Diversity*, 937 F.3d at 537. But this rule must be understood in view of the principle that someone "accorded a procedural right . . . can assert that right without meeting all the normal standards for redressability and immediacy." *Defs. of Wildlife*, 504 U.S. at 572 n.7. Thus, while some degree of contingency is involved in alleging injury based on the unassessed risks of agency action, "the plaintiff need not 'establish with any certainty' that the procedural defect 'will cause' harm." *Nat'l Infusion Ctr. Ass'n*, 116 F.4th at 503 (quoting *Defs. of Wildlife*, 504 U.S. at 572 n.7). Nor does the fact that the DFE may not be completed for some time make this case unsuited for adjudication. *See Defs. of Wildlife*, 504 U.S. at 572 n.7. These black-letter propositions from note 7 of *Defenders* make clear that the plaintiffs plausibly alleged injury in fact.

ii.

We now consider whether the plaintiffs sufficiently alleged traceability and redressability. "As in all cases, standing in an EIS suit requires adequate proof of causation. The conceptual difficulty with this requirement, in this type of case, is that an adequate causal chain must contain at least

two links: one connecting the omitted EIS to some substantive government decision that may have been wrongly decided because of the lack of an EIS and one connecting that substantive decision to the plaintiff's particularized injury." *Ctr. for Biological Diversity*, 937 F.3d at 543 (quoting *Fla. Audubon Soc'y*, 94 F.3d at 668). The injury is redressable by judicial review as long as there is some prospect that "fixing the alleged procedural violation could cause the agency to 'change its position' on the substantive action." *Id.* (quoting *Sierra Club v. FERC*, 827 F.3d 59, 67 (D.C. Cir. 2016)). That standard is not demanding. A NEPA plaintiff need not "establish with any certainty" that complying with NEPA will cause an agency's decision to be "withheld or altered." *Defs. of Wildlife*, 504 U.S. at 572 n.7. It is enough for a plaintiff to "show that there is a possibility that the procedural remedy will redress his injury." *Sierra Club v. Glickman*, 156 F.3d 606, 613 (5th Cir. 1998).

The plaintiffs have shown sufficient traceability and redressability to proceed past the pleading stage. As described above, the plaintiffs alleged that the Corps' failure to account for updated flood, climate, and engineering information could lead to a deficient levee design, risking the particularized injury of environmental harm to their land—because, for example, the levees might not be tall enough to account for subsidence. But, they say, "[i]t is certainly possible" that "a supplemental EIS would cause the Corps to decide not to proceed under its current plans, [since they] are based on outdated design and engineering criteria." Thus the "alleged procedural failures" may "lead to the construction of a project, causing [plaintiffs'] injuries." *Citizens in Brazoria Cnty.*, 98 F.4th at 188 n.5. And preparing an SEIS "may at least force the Government to reconsider its decision, which satisfies the redressability element." *Id.* So the plaintiffs properly alleged Article III standing for their claims against the Army Corps of Engineers.

C.

The parties also dispute statutory standing. "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "[I]n the APA context, . . . the test is not 'especially demanding.'" *Id.* at 130 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 118, 130 (2012)). We assume without deciding that similar principles as in our NEPA cases, *see, e.g.*, *Sabine River Auth.*, 951 F.2d at 675–76, apply to APA claims for violation of the CWA, noting that the amended complaint does not substantially rely on the CWA's citizen-suit provision, 33 U.S.C. § 1365.

"Unlike constitutional standing, prudential standing arguments may be waived." *Bd. of Mississippi Levee Com'rs v. EPA*, 674 F.3d 409, 417 (5th Cir. 2012); *see, e.g.*, *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 314 n.5 (5th Cir. 2024). The Corps admits that allegations such as "unnecessary flooding, damage to surface and subsurface soils, surface and groundwater, and surrounding land contiguous to the completed DFE Project which Plaintiffs will continue to own," as well as "migration of . . . contaminants," generally fall within the zones of interests protected by the statutory provisions at issue. The Corps argues only that "protecting . . . property from eminent domain" falls outside the zones. *See Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 273 (D.C. Cir. 2015). But as described in the next section, on appeal the Appellants do not stand any claim on that interest. And the Corps' own authority states that the mere presence of economic interest alongside environmental interest is not "disqualif[ying]." *Id.* at 274. We conclude accordingly that at least the claims against the Army Corps of Engineers are not disqualified.

No. 23-10892

## D.

On the other hand, we have no reason to disturb the dismissal of the City of Dallas from the proceedings. Appellants clarified at oral argument that they were not seeking to invoke federal jurisdiction for any claims relating to the City's condemnation. Oral Arg. at 1:27, 3:11, 3:28, 4:42. With these claims abandoned, we do not reach the "difficult question" of whether the Anti-Injunction Act, 28 U.S.C. § 2283, would bar relief in this case. *See Boerschig v. Trans-Pecos Pipeline, L.L.C.*, 872 F.3d 701, 705 (5th Cir. 2017).

## E.

The district court did not reach the question of whether the suit was barred by the statute of limitations in 28 U.S.C. § 2401(a). The Supreme Court recently instructed that the statute of limitations for APA claims "begins to run only when the plaintiff has a complete and present cause of action." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2452 (2024). This statement invites further analysis, particularly in the context of claims that an agency has unlawfully failed to act or delayed acting. *See, e.g.*, *Harrison Cnty.*, 63 F.4th at 464 n.8 (addressing claims based on agency action); *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 868 (10th Cir. 2023) (noting diverging approaches). We reserve such discussion for the district court in the first instance.

## IV.

For the foregoing reasons, we REVERSE the district court's dismissal of the suit with respect to the Army Corps of Engineers, AFFIRM the dismissal with respect to the City of Dallas, and REMAND for further proceedings consistent with this opinion.